**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

|  |  |  |
|---|---|---|
| TIMOTHY NELLIS, JANEL DRANES, LUCY SOUSA, DAVID CASTILLO, and EDWARD CAMARENA on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 1:20-CV-2486 |
| vs. | ) ) | Honorable Robert M. Dow Jr. |
| VIVID SEATS LLC, a Delaware Corporation, Defendant. | ) ) ) ) | |

**FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**

**INTRODUCTION**

1.     Plaintiffs Timothy Nellis, Janel Dranes, Lucy Sousa, David Castillo, and Edward Camarena ("Plaintiffs"), by and through their counsel, bring this Class Action Complaint against Vivid Seats LLC ("Vivid Seats"), on behalf of themselves and on behalf of a class of similarly situated individuals, and allege, upon personal knowledge as to their own actions, and upon investigation of counsel as to all other matters, as follows:

**NATURE OF THE ACTION**

2.     In the midst of the greatest public health and economic crisis in living memory, the Defendant, which grosses more than one billion dollars in annual revenue, has sought to surreptitiously shift its losses onto its innocent customers, furthering the financial hardship endured by people across the country.

3.     Defendant owns and operates the world's third largest "secondary market" for event tickets.  The market operates primarily though Defendant's website, www.VividSeats.com (the "Website").

4.     On the Website, sellers list tickets for sale to events such as sporting contests, theater

shows, concerts, and music festivals, among others. Buyers can find these listed tickets and purchase them directly though the Website. Defendant charges fees to both the buyers and sellers for their services.

5.      Plaintiffs bring this action on behalf of themselves and a class of similarly situated individuals who were deprived of the benefit of Defendant's longstanding "100% Buyer Guarantee" when, in response to apparent liabilities it would incur stemming from the COVID-19 pandemic, Defendant sought to retroactively discontinue the essential function of the 100% Buyer Guarantee, a legally-required full cash refund.

6.      Defendant has quietly sought to force its buyers to endure the financial losses that Defendant's own guarantee created for Defendant in the entirely foreseeable scenario that world occurrences would cause the simultaneous cancellation of numerous public events.

7.      Defendant's uniform conduct is equally applicable to Plaintiffs and the Class.  Plaintiffs bring this class action against Defendant for: (1) breach of contract; (2) breach of implied contract; (3) violations of state consumer protection statutes; (4) conversion; (5) unjust enrichment; (6) negligent misrepresentation; and (7) breach of express warranty.  Plaintiffs seek an order requiring Defendant to, among other things: (1) reverse the unlawful, purportedly retroactive changes it has sought to make to its refund policy as it relates to tickets purchased prior to the date when they unilaterally discontinued their prior 100% Buyer Guarantee; (2) cease issuing "loyalty credits" in lieu of refunds to any Class member who has not requested such credits; and (3) pay damages and restitution to Plaintiffs and Class members.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are numerous class members who are citizens of states different from Defendant.  The number of members of the proposed class is in the aggregate greater than 100 and

more than two-thirds of the class members reside in states other than the state(s) in which Defendant is a citizen.

9.      This Court has personal jurisdiction over Defendant because its principal place of business is in Illinois, it conducts substantial business in Illinois, and a substantial portion of the acts complained of took place in Illinois.

10.     Venue is proper in the Northern District of Illinois for the foregoing reasons, because Defendant conducts business in this District and many of the events that gave rise to Plaintiffs' claims occurred in this District.

## PARTIES

11.     Plaintiff Timothy Nellis is an individual and a citizen of Florida.

12.     Plaintiff Janel Dranes is an individual and a citizen of Illinois.

13.     Plaintiff Lucy Sousa is an individual and a citizen of New Hampshire.

14.     Plaintiff David Castillo is an individual and a citizen of California

15.     Plaintiff Edward Camarena is in individual and a citizen of California.

16.     Defendant Vivid Seats LLC is a Delaware Corporation with its principal place of business located in Chicago, Illinois. Vivid Seats LLC can be served through its registered agent Cogency Global at 600 South Second St., Suite 404, Springfield, IL 62704.

## FACTUAL ALLEGATIONS

17.     For years, in the process of building a marketplace in which consumers would be comfortable paying substantial prices, often beyond face-value, for event tickets from strangers on the internet, Vivid Seats relied on its 100% Buyer Guarantee to induce customers to make purchases, which was incorporated into various communications to consumers and heavily marketed to prospective customers.

18.     The 100% Buyer Guarantee promised that if a Vivid Seats user purchased tickets to any event through Vivid Seats, and the event was cancelled, the user would receive a full, money-back

refund for their purchase.

19.     To avoid financial losses, and potential future losses, due to the Covid-19 crisis, Defendant unilaterally and unconscionably changed its longstanding policy, including for customers who purchased tickets while Vivid Seats actively promoted and promised their 100% Buyers Guarantee, to instead leave their customers holding the bag.

*Vivid Seats Online Ticket Marketplace*

20.     Vivid Seats is a secondary ticket marketplace that connects ticket sellers with buyers.

21.     Vivid Seats requires all prospective sellers to register through its website and provide a valid credit card and Paypal account, through which they can receive payments from Vivid Seats.

22.     Following registration, sellers provide certain ticket information, including list price, and can post the tickets for sale to the Vivid Seats online marketplace, where buyers can view and purchase the tickets.

23.     Once a purchase is completed, Vivid Seats charges the buyer and the seller a fee. The seller fee is typically 10% of the total sale price.

24.     Vivid Seats charges buyers a service fee and a delivery fee or electronic transfer fee to every order, which often add up to more than 25% of the total sale price for a single ticket.

25.     Buyers are not required to register with Vivid Seats in order to purchase tickets, and can purchase tickets by simply providing a credit card or using Paypal.

26.     The vast majority of tickets are available to buyers through instant download and require no physical delivery.

27.     A longstanding, obvious problem with Vivid Seats' business model is the fact that it is enormously dependent on "ticket brokers," or professional scalpers who amass as many tickets as possible to popular events and then sell them on secondary markets like Defendant's.

28.     Vivid Seats business model made numerous concessions in order to encourage ticket brokers to use its marketplace.

4

29.     For example, in the "Seller Terms and Conditions" that Vivid Seats had on its website until March 11, 2020, Defendant noted that "sellers typically receive payments issued to their registered Paypal accounts not more than fourteen (14) business days after delivery to buyer, regardless of method of delivery, unless otherwise agreed to by Vivid Seats. For events that are more than 100 days from the date of the sale, Sellers receive payment approximately 90 days from the date of the event."

30.     By paying ticket brokers immediately, Vivid Seats could ensure that those brokers' liquidity was freed up to purchase more tickets which could be sold on the site, and on and on. It is not unlikely that the same broker could be paid out numerous times for numerous sets of tickets to events that had not yet occurred using the same funds.

31.     In this model, the brokers and Vivid Seats both make more money than if Vivid Seats were responsible and held on to the proceeds until the event occurred.

32.     The problem here is apparent to any thinking person. If Vivid Seats has already paid the seller for the tickets, but the event still has not occurred, it will have to come up with the money on its own if it needs to honor the 100% Buyer Guarantee in the event of a cancellation. The more cancellations that occur, the more money Vivid Seats needs to come up with.

33.     Astonishingly, Vivid Seats either did not see the problem with this business model - or it was too busy making money to care. But eventually, as it became clear that many events would be canceled and around the same time it attempted to revoke its guarantees to buyers, Vivid Seats unilaterally changed its seller policy to make payment only after the event had occurred.

34.     Defendant's website contains Terms of Use. Those Terms of Use contains a provision that purports to require users to arbitrate certain claims against Defendant.

35.     Plaintiffs never viewed or assented to Defendant's Terms of Use.

36.     No person could reasonably be expected to view Defendant's Terms of Use based on the way Defendant's site is organized.

### *The Vivid Seats 100% Buyer Guarantee*

37.     Vivid Seats' online ticket marketplace is made possible by the promise, or perception, that it is a viable, protected medium through which buyers can obtain event tickets in a protected, low-risk environment.

38.     A key pillar of the Vivid Seats marketplace's success is its 100% Buyer Guarantee, which provides buyers with an assurance that they will not be left in the lurch in the case of an event cancellation.

39.     Prior to its recent change and gutting, the Vivid Seats 100% Buyer Guarantee stated that it was "designed to give you full peace-of-mind, safety, and security."

40.      Vivid Seats' well-publicized 100% Buyer Guarantee was clear as day:  Vivid Seats promised that "you will be refunded for a cancelled event."

41.     Vivid Seats stated that "[i]f an event is canceled with no rescheduled date, you are *naturally entitled to a full refund of the purchase price, including delivery charges*. For events that are rescheduled, we will assist you with any ticket reissuing concerns or help you sell your tickets if the new date is no longer desirable to you."

42.     This "full refund" for cancelled events has been Vivid Seats' longstanding policy, and its customers relied upon that promise when making ticket purchases.

43.     The 100% Buyer Guarantee was heavily advertised.

44.     Across the country, Vivid Seats ran television commercials featuring superstar athletes like NFL stars Charles Woodson, Randy Moss, and MLB stars Mark Teixeira, and David Ross which prominently featured the guarantee

45.     By Defendant's own admission, its "national advertising campaign" includes "[o]ne advertisement focuse[d] on retired NFL superstars Randy Moss and Charles Woodson as they discuss how Vivid Seats' buying tools can help them easily find seats with a "wide open" view for an upcoming

football game, all with the backing and support of Vivid Seats' 100% Buyer Guarantee.[1]

46.    Its commercials featured verbal announcements of the 100% Buyer Guarantee, and featured them prominently in text:

<u>Vivid Seats TV Advertisement With Randy Moss and Charles Woodson</u>



---

[1] https://www.vividseats.com/blog/vivid-seats-debuts-inaugural-national-advertising-campaign (Last visited Apr. 22, 2020).

<u>Vivid Seats' TV Advertisement With Mark Teixeira and David Ross</u>



47.     Vivid Seats notes that the foregoing ad campaign was aired across a wide variety of media, on a national level.

48.     Another ad which has been aired nationally in 2020 (as recently as March 12 on ESPN's SportsCenter") touts that "every ticket is backed by a 100% buyer guarantee" while displaying the following scene:



49.     The 100% Buyer Guarantee is also features prominently and repeatedly on Vivid Seats' website. It remains fixed to the window during the entirety of the shopping process:







Closeup of Top-Right Section of Page

50.     Vivid Seats intends for its customers to rely on the 100% Buyer Guarantee when making

purchases, as it knows that much cheaper tickets are available directly to its customers through other

mediums, including cash sales outside of venues and direct buyer to seller marketplaces.

51.     Largely because of the 100% Buyer Guarantee, Vivid Seats users are willing to pay premium prices for tickets, and to pay substantial fees of more than 20-30% of the ticket price directly to Vivid Seats—even though substantially identical tickets were available for purchase elsewhere.

52.     A major component of Vivid Seats' value, and viability as a company, is that purchases are secure and refunds are available for cancelled events. Such a benefit is not available to buyers who make purchases directly from other available resellers, through other direct online market sites such as craigslist.com or Facebook Marketplace, where there is no intermediary exercising authority and control over the exchange—and where tickets can be purchased without fees and other markups.

### Vivid Seats' Shameful Response to the Covid-19 Crisis

53.     By March 2020, it became apparent that the United States was about to be hit hard by the Covid-19 virus.  This impending crisis inspired fear and trepidation among consumers who were increasingly unwilling to venture into public or attend public gatherings.  Accordingly, confidence in making event ticket purchases among Vivid Seats' customers was rapidly deteriorating.

54.     On March 13, 2020, Vivid Seats updated its website to reassure its customers in the wake of the growing Covid-19 crisis. The updated stated that "Vivid Seats is closely monitoring the current global situation involving the coronavirus (COVID-19), especially as it relates to the impact on live events. We want to make sure customers have the information they need regarding their ticket purchase from Vivid Seats."[2]

55.     Vivid Seats continued by promising that "[i]f a customer purchased tickets to an event that is canceled with no rescheduled date, they are entitled to a full refund of the purchase price, including delivery charges, per Vivid Seats' 100% Buyer Guarantee. ***There is no need to take any action***, and our award-winning customer service team will contact customers directly regarding next steps." (Emphasis added).

---

[2]https://web.archive.org/web/20200407050613/https://support.vividseats.com/support/solutions/articles/11000083676-information-regarding-the-coronavirus-impact (Last visited April 20, 2020).

56.     For the first time, and in response to the Covid-19 crisis, Vivid Seats introduced an additional promise that, at buyers' sole option, they could choose to receive a 120% Vivid Seats credit in lieu of a full cash refund.

57.     Vivid Seats' March 13 update was an open invitation for consumers to put full faith and trust in the company's longstanding commitment to the 100% Buyer Guarantee, and the company encouraged its customers to rely on the policy, despite ongoing and developing world events that it knew threatened to substantially undermine ticket sales.

58.     Quietly, and without delivering any corresponding communication to all customers, Vivid Seats reversed course from its prior assurances and suddenly discontinued its longstanding 100% Buyer Guarantee.

59.     Instead, Vivid Seats suddenly refused to honor its widely advertised 100% Buyer Guarantee to its buyers, and forced customers to accept only future "Rewards Cash loyalty credit."

60.     Vivid Seats also reduced the amount of its future "Rewards Cash loyalty credit" by 10% from its prior communication offering a 120% credit, which was previously at the sole option of the buyer.

61.     Vivid Seats changed its website's advertisement of the 100% Buyer Guarantee from "you will be refunded for a cancelled event" to "you will be compensated for a cancelled event."[3]

62.     The website now states, "[i]f an event is canceled with no rescheduled date, you will receive a full refund of the purchase price (including delivery charges, less possible restocking fees), or credit for use on a future purchase, as determined at our sole discretion."

63.     Vivid seats quietly added an additional requirement for any customers who wish a cash refund instead of a "Rewards Cash loyalty credit." Customers who wish a refund must now contact the

---

[3] https://www.vividseats.com/guarantee.html (last visited April 20, 2020).

customer service team within 7 days of the event's cancellation or else their claim to a cash refund is purportedly extinguished. Previously, a full cash refund was the default.

64.     Vivid Seats has collected, and continues to hold, funds, including fees, from Plaintiffs and the putative class for cancelled or constructively cancelled events.

65.     Even though many thousands of events have been cancelled, Vivid Seats wrongly refuses to classify the events as "cancelled," allowing it to maintain dominion and control over even more funds which it has no legal right to possess and use for its own business purposes.

66.     Plaintiffs and other members of the putative class have requested refunds but refunds have not been granted.

67.     The prior version of the 100% Buyer Guarantee terms on the website contained no language stating or implying that customers were entitled to a "credit for use on a future purchase." The terms of the prior Buyer Guarantee clearly provided only for a "full refund."

68.     The prior version of Vivid Seats' 100% Buyer Guarantee also included no language stating that all decisions regarding customers' entitlement to either a full refund or a "credit for use on a future purchase," would be "determined at our sole discretion."

69.     Despite the fact that Plaintiffs and the Class made their purchases while the 100% Buyer Guarantee was promised and in full force, Vivid Seats has refused to honor the existing promise, shifting the burden of its corporate losses and potential future losses onto many thousands of its loyal customers.

## PLAINTIFFS USE OF VIVID SEATS

### Plaintiff Timothy Nellis

70.     On or about February 14, 2020, Plaintiff Nellis used Defendant's service to purchase a ticket to a March 21, 2020 Major League Baseball spring training game between the Minnesota Twins and the New York Yankees to occur in Florida.

71.     Plaintiff Nellis paid Defendant approximately $62.90 for his ticket.

72.     On March 12, 2020, Major League Baseball announced the cancellation of all remaining spring training games, including the game to which Plaintiff Nellis has purchased a ticket.

73.     Plaintiff Nellis received a number of e-mails from Defendant indicating that he would receive a refund.

74.     First, he was told that he would receive a refund within 2-4 weeks. When that timeframe passed, he was told he would be refunded within a week. Then, he was told that he would be refunded, but he was given no timetable. He has yet to receive a refund.

75.     When Plaintiff Nellis purchased the event ticket through Defendant, his purchase was subject to the 100% Buyer Guarantee. His event was cancelled, and Defendant utterly failed to honor that guarantee.

**Plaintiff Janel Dranes**

76.     On or about March 9, 2020, Plaintiff Dranes used Defendant's service to purchase two tickets to the Big Ten Conference Basketball Tournament scheduled to occur in Indianapolis, Indiana on March 12, 2020.

77.     Plaintiff Dranes paid approximately $200 for the tickets.

78.     The event was cancelled.

79.     Defendant contacted Plaintiff Dranes by e-mail shortly after the cancellation and provided her with the "option" to select a credit instead of a refund, but she wanted a refund.

80.     Later, in mid-April when she had still not received a refund, Defendant sent Plaintiff Dranes another e-mail, this time indicating that she would be receiving a credit by default unless she contacted them to elect a monetary refund within 7 days.

81.     Plaintiff Dranes called the telephone number that Defendant provided to her. After Defendant's customer service agent attempted to convince her to take a credit by offering an additional 20-25% in credit value, she continued to insist on a refund.

82.     The customer service agent indicated that Defendant would "process" the refund request, but that at a minimum, "it would be a while" before she could receive any refund. She was

given no timeline and no firm commitment.

83. When Plaintiff Dranes purchased the event tickets through Defendant, her purchase was subject to the 100% Buyer Guarantee. Her event was cancelled, and Defendant utterly failed to honor that guarantee.

**Plaintiff Lucy Sousa**

84. On or about January of 2020, Plaintiff Sousa used Defendant's service to purchase two tickets for WWE's Marquee event, Wrestlemania, to be held on April 5, 2020 in Tampa, Florida.

85. Plaintiff Sousa paid $1,923.40 for two tickets to Wrestlemania.

86. Using Defendant's service, Plaintiff also purchased two tickets to WWE's Monday Night Raw event, scheduled for April 6, for which she paid $442.86.

87. Plaintiff Sousa also used Defendant's service to purchase two tickets to a Ricky Martin and Enrique Iglesias Concert which is scheduled for October 6 at TD Garden in Boston, Massachusetts. She paid approximately $730 for these tickets.

88. The two WWE events were cancelled, at least insofar as it relates to in-person fans.

89. The October 6 concert has now been rescheduled for October 5, 2021, approximately a full year later, so it has not yet occurred.

90. Despite repeatedly requesting a refund, Plaintiff Sousa has been subjected to constant efforts by Defendant to get her to take credits for the thousands of dollars in tickets she holds. She has continued to press for a refund.

91. Numerous of Plaintiff Sousa's efforts to contact Defendant, including by their online chat function, have resulted in the inability to reach any human.

92. Interestingly, when she threatened to retain an attorney, she finally got a chat response, but was told that the timeline for any refund was outside Defendant's hands.

93.     Defendant's customer service agent told Ms. Sousa that the company had no control over the money to which Ms. Sousa was entitled, and that she could only be paid if the company received money from third parties.

94.     When Plaintiff Sousa purchased the event tickets through Defendant, her purchase was subject to the 100% Buyer Guarantee. Her event was cancelled, and Defendant utterly failed to honor that guarantee.

**Plaintiff David Castillo**

95.     On or about February 16, 2020, Plaintiff David Castillo used Defendant's service to purchase 4 tickets to a regular season baseball game scheduled for March 28, 2020 between the San Francisco Giants and the Los Angeles Dodgers at Dodger Stadium in Los Angeles, California.  Tickets to the game expressly included a Max Muncy Bobblehead Giveaway

96.     Plaintiff was located in California at the time he executed this electronic purchase through Defendant's service.

97.     Plaintiff Castillo paid $421.20 for these tickets.

98.     On March 13, 2020, Defendant sent Mr. Castillo an email reassuring him that in the event his event becomes cancelled and not rescheduled due to the Covid-19 pandemic, he will be entitled to a full refund of the purchase price, including delivery charges, "per Vivid Seats' 100% Buyer Guarantee".

99.     The March 28, 2020 baseball game for which Plaintiff purchased tickets was indefinitely postponed and not rescheduled.

100.    The game was ultimately cancelled.  Following the final conclusion of the eventual 2020 MLB baseball season, the game did not occur, and will never occur.

101.    On April 30, 2020, after learning that the Los Angeles Dodgers were issuing refunds to customers who purchased tickets directly from the box office, Mr. Castillo wrote an email notifying Vivid Seats of this fact.  Mr. Castillo requested a refund in the amount of $420.21 and included his

order number for reference.

102.    Vivid Seats responded to Mr. Castillo's refund request on June 18, 2020 and denied his request.

103.    Mr. Castillo was forced to accept a Rewards Cash loyalty credit instead of the requested refund, despite the event cancellation and Defendant's 100% Buyer Guarantee.

104.    Mr. Castillo informed Defendant that he wanted a refund, not credits.

105.    At the time Plaintiff Castillo purchased the event tickets through Defendant, his purchase was subject to the 100% Buyer Guarantee. His event was cancelled, and Defendant failed to honor that guarantee.

**Plaintiff Edward Camarena**

106.    On or about early 2020, Plaintiff Edward Camarena used Defendant's service to purchase tickets to a Bruno Mars concert scheduled for April 25, 2020 in Las Vegas, Nevada.

107.    Plaintiff was located in California at the time he executed this electronic purchase through Defendant's service.

108.    The concert for which Plaintiff Camarena purchased tickets, was part of a Las Vegas residency at the Park MGM which was promoted by LiveNation.

109.    On or about March 12, 2020, LiveNation announced the postponement of all large concerts due to the pandemic.

110.    No replacement date has been rescheduled for the concert.

111.    Mr. Camerana seeks a refund for his purchase of the concert tickets.

112.    At the time Plaintiff Camarena purchased the event tickets through Defendant, his purchase was subject to the 100% Buyer Guarantee. His event was postponed and has not been rescheduled nearly one year later, and Defendant failed to honor that guarantee.

## CLASS ALLEGATIONS

113.    Plaintiffs bring this class action under Rule 23 and seek certification of the claims and

issues in this action pursuant to the applicable provisions of Rule 23.  The proposed class is defined as:

> All Persons residing in the United States, its territories or Canada who purchased a ticket through Vivid Seats to an event that was subsequently cancelled, postponed, and/or rescheduled.

> In the alternative, Plaintiffs propose the following classes:

> The Illinois Class:

> All persons residing in Illinois who purchased a ticket through Vivid Seats to an event that was subsequently cancelled, postponed, and/or rescheduled.

> The Florida Class:

> All persons residing in Florida who purchased a ticket through Vivid Seats to an event that was subsequently cancelled, postponed, and/or rescheduled.

> The California Class:

> All persons residing in California who purchased a ticket through Vivid Seats to an event that was subsequently cancelled, postponed, and/or rescheduled.

> and The New Hampshire Class:

> All persons residing in New Hampshire who purchased a ticket through Vivid Seats to an event that was subsequently cancelled, postponed, and/or rescheduled.

Specifically excluded from the Class and each alternative state class are (a) Vivid Seats and its subsidiaries and affiliates, employees, officers, directors, agents and representatives; (b) counsel for the Plaintiffs; and (c) the judges who have presided over the Litigation.

114.    Plaintiffs reserve the right to amend or modify the Class definitions with greater specificity or division into subclasses as developments or circumstances may dictate.

115.    Numerosity.  Fed. R. Civ. P. 23(a)(1).  More than 10,000 events in the United States have been cancelled, postponed, or rescheduled, and Vivid Seats facilitates ticket sales to the vast majority of events in the United States to its millions of users. At a minimum, there are tens of thousands of Class Members but very likely many more. The exact size of the proposed class and the identity of all class members can be readily ascertained from Defendant's records.

116.    Commonality.  Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are questions of law and fact

common to the class, which questions predominate over any questions affecting only individual class members.  Common issues include:

        a.      Whether there was a contract or implied contract between Plaintiffs and Defendant, and, if so, what provisions if any apply to Plaintiffs' claims;

        b.      Whether or the extent to which Defendant's statements and representations regarding the 100% Buyer Guarantee are or constituted misrepresentations'

        c.      Whether Defendant's failure to issue promised refunds constitutes a breach of contract, breach of implied contract, conversion, and/or unjust enrichment;

        d.      Whether Defendant knew or should have known that in the event of widespread event cancellations they would be unable to honor their 100% Buyer Guarantee;

        e.      Whether Defendant's conduct is violative of the Illinois Ticket Sale and Resale Act;

        f.      Whether Defendant's conduct is deceptive in violation of state consumer protection statutes;

        g.      The nature of the relief, including equitable relief, to which Plaintiffs and the class are entitled.

117.    Typicality.  Fed. R. Civ. P. 23(a)(3).  Plaintiffs' claims are typical of the claims of the Class they seek to represent.  Plaintiffs and all Class members were exposed to uniform practices and sustained injuries arising out of and caused by Defendant's unlawful conduct.

118.    Adequacy of Representation.  Fed. R. Civ. P. 23(a)(4).  Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.  Further, Plaintiffs' counsel is competent and experienced in litigating class actions.

119.    Superiority.  Fed. R. Civ. P. 23(b)(3).  A class action is superior to any other available means for the fair and efficient adjudication of this controversy.  The claims of Plaintiffs and individual class members are small compared to the burden and expense that would be required to separately

litigate their claims against Defendant, and it would be impracticable for class members to seek redress individually. Litigating claims individually would also be wasteful to the resources of the parties and the judicial system and create the possibility of inconsistent or contradictory judgments. Class treatment provides manageable judicial treatment which will bring an orderly and efficient conclusion to all claims arising from Defendant's misconduct. Class certification is therefore appropriate under Rule 23(b)(3).

120.    Class certification is also appropriate under Rule 23(b)(1), as the prosecution of separate actions by individual members of the class would create the risk of adjudications with respect to individual class members that would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and substantially impair their ability to protect those interests.

121.    Class certification is also appropriate under Rule 23(b)(2), as Defendant has acted and/or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate for the class.

## FIRST CAUSE OF ACTION

### Breach of Contract

**(All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiff Dranes on Behalf of the Illinois Class – Under the Law of the State of Illinois)**

122.    Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

123.    A contract was formed between Plaintiffs and Class members on the one hand and Defendant on the other with respect to purchases made on Defendant's Website.

124.    The contract was offered by Defendant and formed at the time Plaintiffs and the Class accepted it by making ticket purchase(s).

125.    The contract that governs the transactions at issue in this case includes the 100% Buyer Guarantee that was operative at the time of purchase.

126.    Plaintiffs and the Class performed their obligations under the contract by purchasing

ticket(s) and rendering payment.

127.     The tickets purchased through Defendant's business became unusable and without value due to a cancellation or constructive cancellation.

128.     Defendant breached the contract when they collected Plaintiffs' funds but ceased providing full cash refunds, including fees, to cancelled or constructively cancelled events as required under its terms, and again when they refused to provide refunds to Plaintiffs.

129.     Defendant's breaches were knowing and willful and not the result of mistake or inadvertence.

130.     As a result of Defendant's breach of the 100% Buyer Guarantee, Plaintiffs and other Class members have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### Breach of Contract

**(All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiff Nellis on behalf of the Florida Class – Under the Law of the State of Florida)**

131.     Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

132.     A contract was formed between Plaintiffs and Class members on the one hand and Defendant on the other with respect to purchases made on Defendant's Website.

133.     The contract was offered by Defendant and formed at the time Plaintiffs and the Class accepted it by making ticket purchase(s).

134.     The contract that governs the transactions at issue in this case includes the 100% Buyer Guarantee that was operative at the time of purchase.

135.     Plaintiffs and the Class performed their obligations under the contract by purchasing ticket(s) and rendering payment.

136.     The tickets purchased through Defendant's business became unusable and without value due to a cancellation or constructive cancellation.

137.     Defendant breached the contract when they collected Plaintiffs' funds but ceased providing full cash refunds, including fees, to cancelled or constructively cancelled events as required under its terms, and again when they refused to provide refunds to Plaintiffs.

138.     Defendant's breaches were knowing and willful and not the result of mistake or inadvertence.

139.     As a result of Defendant's breach of the 100% Buyer Guarantee, Plaintiffs and other Class members have been damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

**Breach of Contract**

**(All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiffs  Castillo and Camarena on behalf of the California Class – Under the Law of the State of California)**

140.     Plaintiffs incorporate the all preceding factual allegations as if fully set forth herein.

141.     A contract was formed between Plaintiffs and Class members on the one hand and Defendant on the other with respect to purchases made on Defendant's Website.

142.     The contract was offered by Defendant and formed at the time Plaintiffs and the Class accepted it by making ticket purchase(s).

143.     The contract that governs the transactions at issue in this case includes the 100% Buyer Guarantee that was operative at the time of purchase.

144.     Plaintiffs and the Class performed their obligations under the contract by purchasing ticket(s) and rendering payment.

145.     The tickets purchased through Defendant's business became unusable and without value due to a cancellation or constructive cancellation.

146.     Defendant breached the contract when they collected Plaintiffs' funds but ceased providing full cash refunds, including fees, to cancelled or constructively cancelled events as required under its terms, and again when they refused to provide refunds to Plaintiffs.

147.    Defendant's breaches were knowing and willful and not the result of mistake or inadvertence.

148.    As a result of Defendant's breach of the 100% Buyer Guarantee, Plaintiffs and other Class members have been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### Breach of Contract

### (All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiff Sousa on behalf of the New Hampshire Class – Under the Law of the State of New Hampshire)

149.    Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

150.    A contract was formed between Plaintiffs and Class members on the one hand and Defendant on the other with respect to purchases made on Defendant's Website.

151.    The contract was offered by Defendant and formed at the time Plaintiffs and the Class accepted it by making ticket purchase(s).

152.    The contract that governs the transactions at issue in this case includes the 100% Buyer Guarantee that was operative at the time of purchase.

153.    Plaintiffs and the Class performed their obligations under the contract by purchasing ticket(s) and rendering payment.

154.    The tickets purchased through Defendant's business became unusable and without value due to a cancellation or constructive cancellation.

155.    Defendant breached the contract when they collected Plaintiffs' funds but ceased providing full cash refunds, including fees, to cancelled or constructively cancelled events as required under its terms, and again when they refused to provide refunds to Plaintiffs.

156.    Defendant's breaches were knowing and willful and not the result of mistake or inadvertence.

157.    As a result of Defendant's breach of the 100% Buyer Guarantee, Plaintiffs and other

Class members have been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### Breach of Implied Contract

**(All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiff Dranes on Behalf of the Illinois Class – Under the Law of the State of Illinois)**

158.    Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

159.    An implied contract was formed between Plaintiffs and Defendant that included a promise to honor the 100% Buyer Guarantee when Plaintiffs made purchases of event tickets through Defendant's website.

160.    Such implied agreement can be presumed from the acts of Plaintiffs and Defendant because the agreement was formed under circumstances that evinced a mutual intent to contract.

161.    Defendant offered Plaintiffs and other Class Members tickets and a promise to guarantee a full cash refund, including all fees paid, in the event of an event cancellation or constructive cancellation in exchange for payment from Plaintiffs.

162.    Plaintiffs accepted Defendant's offer by purchasing tickets from Defendant and remitted payment to Defendant.

163.    Plaintiffs paid good consideration to Defendant in exchange for the event tickets, which were fully backed by Defendant's well-advertised 100% Buyer Guarantee.

164.    Plaintiffs fully performed on their obligations under the bargain.

165.    Defendant breached the contract by receiving and retaining Plaintiffs' payment but refusing to honor the 100% Buyer Guarantee with a full refund of all payments made, including fees.

166.    As a result of Defendant's conduct, Plaintiffs and other Class Members have been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### Breach of Implied Contract

**(All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiff Nellis on behalf of the Florida Class – Under the Law of the State of Florida)**

167.     Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

168.     An implied contract was formed between Plaintiffs and Defendant that included a promise to honor the 100% Buyer Guarantee when Plaintiffs made purchases of event tickets through Defendant's website.

169.     Such implied agreement can be presumed from the acts of Plaintiffs and Defendant because the agreement was formed under circumstances that evinced a mutual intent to contract.

170.     Defendant offered Plaintiffs and other Class Members tickets and a promise to guarantee a full cash refund, including all fees paid, in the event of an event cancellation or constructive cancellation in exchange for payment from Plaintiffs.

171.     Plaintiffs accepted Defendant's offer by purchasing tickets from Defendant and remitted payment to Defendant.

172.     Plaintiffs paid good consideration to Defendant in exchange for the event tickets, which were fully backed by Defendant's well-advertised 100% Buyer Guarantee.

173.     Plaintiffs fully performed on their obligations under the bargain.

174.     Defendant breached the contract by receiving and retaining Plaintiffs' payment but refusing to honor the 100% Buyer Guarantee with a full refund of all payments made, including fees.

175.     As a result of Defendant's conduct, Plaintiffs and other Class Members have been damaged in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### Breach of Implied Contract

**(All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiffs Castillo and Camarena on behalf of the California Class – Under the Law of the State of California)**

176.     Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

177.     An implied contract was formed between Plaintiffs and Defendant that included a promise to honor the 100% Buyer Guarantee when Plaintiffs made purchases of event tickets through Defendant's website.

178.     Such implied agreement can be presumed from the acts of Plaintiffs and Defendant because the agreement was formed under circumstances that evinced a mutual intent to contract.

179.     Defendant offered Plaintiffs and other Class Members tickets and a promise to guarantee a full cash refund, including all fees paid, in the event of an event cancellation or constructive cancellation in exchange for payment from Plaintiffs.

180.     Plaintiffs accepted Defendant's offer by purchasing tickets from Defendant and remitted payment to Defendant.

181.     Plaintiffs paid good consideration to Defendant in exchange for the event tickets, which were fully backed by Defendant's well-advertised 100% Buyer Guarantee.

182.     Plaintiffs fully performed on their obligations under the bargain.

183.     Defendant breached the contract by receiving and retaining Plaintiffs' payment but refusing to honor the 100% Buyer Guarantee with a full refund of all payments made, including fees.

184.     As a result of Defendant's conduct, Plaintiffs and other Class Members have been damaged in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

### Breach of Implied Contract

### (All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiff Sousa on behalf of the New Hampshire Class – Under the Law of the State of New Hampshire)

185.     Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

186.     An implied contract was formed between Plaintiffs and Defendant that included a promise to honor the 100% Buyer Guarantee when Plaintiffs made purchases of event tickets through Defendant's website.

187. Such implied agreement can be presumed from the acts of Plaintiffs and Defendant because the agreement was formed under circumstances that evinced a mutual intent to contract.

188. Defendant offered Plaintiffs and other Class Members tickets and a promise to guarantee a full cash refund, including all fees paid, in the event of an event cancellation or constructive cancellation in exchange for payment from Plaintiffs.

189. Plaintiffs accepted Defendant's offer by purchasing tickets from Defendant and remitted payment to Defendant.

190. Plaintiffs paid good consideration to Defendant in exchange for the event tickets, which were fully backed by Defendant's well-advertised 100% Buyer Guarantee.

191. Plaintiffs fully performed on their obligations under the bargain.

192. Defendant breached the contract by receiving and retaining Plaintiffs' payment but refusing to honor the 100% Buyer Guarantee with a full refund of all payments made, including fees.

193. As a result of Defendant's conduct, Plaintiffs and other Class Members have been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### Ticket Sale and Resale Act Violation – 815 ILCS 414/1.5(f-5)

**(All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiff Dranes on Behalf of the Illinois Class)**

194. Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

195. Under Illinois Law, ticket brokers and resellers must guarantee a full refund of the amount paid by the purchaser, including all fees paid, if the event for which the ticket has been resold is cancelled and not rescheduled.

196. Defendant violated the Illinois Ticket Sale and Resale Act by revoking and refusing to honor its 100% Buyer Guarantee with respect to Plaintiffs and other Class Members by providing a full

cash refund for all amounts including fees paid for tickets to a cancelled or constructively cancelled events for which there is no rescheduled date.

197.    As a result of Defendant's conduct, Plaintiffs and other Class Members suffered damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

### Consumer Fraud and Deceptive Business Practices Violation - 815 ILCS 505/2

### (All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiff Dranes on Behalf of the Illinois Class)

198.    Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

199.    Defendant engaged in deceptive acts or practices by communicating to prospective buyers that they would be protected by the 100% Buyer Guarantee in the event that events were cancelled as a result of the Covid-19 crisis, then refusing to honor that promise.

200.    Defendant deceptive acts and practices were independently and directly violative of the express requirement of 815 ILCS 414/1.5(f-5) that ticket resellers must provide a full cash refund of the amount paid by the purchaser in the event of a cancelled event.

201.    Defendant intended that Plaintiffs and other Class Members rely on the deception.

202.    Defendant's deceptive acts or practices occurred in the course of their business of selling tickets to consumers.

203.    As a result of Defendant's conduct, Plaintiffs and other Class Members suffered damages in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION

### Florida Deceptive and Unfair Trade Practices Act, Sections 501.201 *et seq.*

### (All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiff Nellis on behalf of the Florida Class – Under the Law of the State of Florida)

204.    Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

205.    Plaintiffs and the members of the Class are consumers, engaged in the purchase of goods and/or services.

206.    Defendant's conduct, described herein, constitutes deceptive acts and/or unfair practices.

207.    Defendant's conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers

208.    Defendant's conduct was likely to mislead consumers.

209.    Such deceptive acts and/or unfair practices caused harm to Plaintiffs.

210.    Specifically, Defendant deceptive acts and/or unfair practices included offering and extensively advertising a guarantee that they knew they would be unable to honor in the event of mass cancellations; refusing to honor their 100% Buyer Guarantee; denying Plaintiffs' refunds; and attempting to change the terms of their guarantee to force customers to accept coupons they do not want in the middle of a public health and economic crisis.

211.    As a result of Defendant's conduct, Plaintiffs and other Class Members suffered losses and damages in an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION

### New Hampshire Regulation of Business Practices for Consumer Protection- Consumer Protection Act., RSA 358-A

### (All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiff Sousa on behalf of the New Hampshire Class – Under the Law of the State of New Hampshire)

212.    Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

213.    Defendant's conduct, described herein, constitutes unlawful methods, acts, and/or practices pursuant to RSA 358-A.

214.    Defendant's conduct, described herein, constitutes unfair and/or deceptive acts and/or practices pursuant to RSA 358-A.

215.    Specifically, Defendant unfair and/or deceptive acts and/or practices included offering and extensively advertising a guarantee that they knew they would be unable to honor in the event of mass

cancellations; refusing to honor their 100% Buyer Guarantee; denying Plaintiffs' refunds; and attempting to change the terms of their guarantee to force customers to accept coupons they do not want in the middle of a public health and economic crisis.

216. Defendant's conduct, described herein, rises to a level of rascality that would raise an eyebrow of someone inured to the rough and tumble world of commerce.

217. As a result of Defendant's conduct, Plaintiffs and other Class Members suffered damages in an amount to be determined at trial.

## THIRTEENTH CAUSE OF ACTION

**Unfair Business Practices in Violation of Business and Professions Code Section 17200, et seq.**

**(All Plaintiffs on behalf of a Nationwide Class, or Alternatively, Plaintiffs Castillo and Camarena on Behalf of the California Class – Under the Law of the State of California)**

218. Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

219. The UCL proscribes unfair business acts or practices.

220. Plaintiffs collectively, and alternatively Plaintiff Castillo individually, is a "person" as defined by Cal. Bus. & Prof. Code § 17200, et seq.

221. A business act or practice is "unfair" under the UCL is the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims. A business act or practice is also "unfair" under the UCL if Defendant's conduct practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. A business act or practice is also "unfair" under the UCL where the consumer injury is substantial; the injury is not outweighed by any countervailing benefits to consumers or competition; and the injury is one that consumers themselves could not reasonably have avoided.

222. Defendant's conduct as detailed herein constitutes unfair business acts and practices.

223.     Defendant enticed Plaintiffs and the Class to use their services by representing that their purchases were protected by the 100% Buyer Guarantee which would issue refunds in the event of cancellations.

224.     No such refunds were provided despite Defendant's promises and repeated, heavy advertising of the 100% Buyer Guarantee.

225.     Defendant charged costs and fees in exchange for the 100% Buyer Guarantee, but the guarantee was largely and ultimately illusory.

226.     Plaintiffs and other class members had no way of reasonably knowing that Defendant were charging them for a service that they would not honor or that they would be denied refunds that they were entitled to in the event of large-scale event cancellations.

227.     The consequences of Defendant's conduct as detailed herein outweigh any justification, motive, or reason for Defendant's conduct.  Defendant's conduct was, is, and continues to be unlawful, immoral, unethical, oppressive, unscrupulous, and substantially injurious to Plaintiffs and members of the class.  Defendant's conduct has caused substantial injury to Plaintiffs and other class members.

228.     As a result of Defendant's unfair business acts and practices, Plaintiffs and other class members have suffered injury in fact and lost money or property.  Plaintiff requests that the Court issue sufficient equitable relief to restore class members to the position they would have been in had Defendant not engaged in unfair competition, including by ordering restitution of all funds that Defendant may have acquired as a result of these practices and an injunction prohibiting further denials of refunds.

## FOURTEENTH CAUSE OF ACTION

**Unlawful Business Practices in Violation of Business and Professions Code Section 17200, et seq.**

**(All Plaintiffs on behalf of a Nationwide Class, or Alternatively, Plaintiffs Castillo and Camarena on Behalf of the California Class – Under the Law of the State of California)**

229.     Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

230.     Defendant's conduct constitutes unlawful business acts or practices under California's Unfair Competition Law, California Business & Professions Code § 17200, et seq. (UCL).

231.     Defendant's business practices are unlawful because, as detailed above, they constitute (1) a breach of contract between Plaintiffs and the class members on the one hand and Defendant on the other; (2) breach of implied contract; (3) conversion; (4) unjust enrichment; and/or (5) negligent misrepresentations.

232.     As a result of Defendant's unlawful business acts and practices, Plaintiff and other class members have suffered injury in fact and lost money or property.

233.     Plaintiff requests that the Court issue sufficient equitable relief to restore class members to the position they would have been in had Defendant not engaged in unlawful business practices and/or unfair competition, including by ordering restitution of all funds that Defendant may have acquired as a result of these practices and an injunction prohibiting further denials of refunds.

## FIFTEENTH CAUSE OF ACTION

### Conversion

**(All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiff Dranes on Behalf of the Illinois Class – Under the Law of the State of Illinois)**

234.     Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

235.     From the moment of cancellation or constructive cancellation, Plaintiffs and the Class owned and had a right to immediately possess the funds in the amount that they paid to Defendant's for tickets to events that were cancelled, including all fees collected.

236.     Plaintiffs held an immediate right to possession of the funds paid to Defendant following cancellation or constructive cancellation of the event(s); yet, Defendant continued to exercise control, dominion or ownership over Plaintiffs' funds, including all fees collected.

237.     Defendant intentionally and substantially interfered with property belonging to Plaintiffs and the Class by taking possession of it, refusing to refund it to Plaintiffs, preventing Plaintiffs

and the Class from having access to it, and/or refusing to return it to Plaintiffs after a demand was made for its return.

238.    Plaintiffs and the Class did not consent to Defendant's conduct in withholding their funds.

239.    Defendant's exercise of dominion and control over Plaintiffs' property was knowing and wrongful.

240.    Plaintiffs and the Class were harmed by Defendant's conduct.

241.    The conduct of each Defendant was a substantial factor in causing this harm to Plaintiffs and the Class.

242.    As a result of Defendant's conduct, Plaintiffs and other Class members have been damaged in an amount to be determined at trial.

## SIXTEENTH CAUSE OF ACTION

### Conversion

**(All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiff Nellis on behalf of the Florida Class – Under the Law of the State of Florida)**

243.    Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

244.    From the moment of cancellation or constructive cancellation, Plaintiffs and the Class owned and had a right to immediately possess the funds in the amount that they paid to Defendant's for tickets to events that were cancelled, including all fees collected.

245.    Plaintiffs held an immediate right to possession of the funds paid to Defendant following cancellation or constructive cancellation of the event(s); yet, Defendant continued to exercise control, dominion or ownership over Plaintiffs' funds, including all fees collected, through positive, overt acts.

246.    Defendant intentionally and substantially interfered with property belonging to Plaintiffs and the Class by taking possession of it, refusing to refund it to Plaintiffs, preventing Plaintiffs and the Class from having access to it, and/or refusing to return it to Plaintiffs after a demand was made

for its return, acting inconsistently with and adverse to the rights of Plaintiffs and the Class, the property's true owner.

247.    Plaintiffs and the Class did not consent to Defendant's conduct in withholding their funds.

248.    Defendant's exercise of dominion and control over Plaintiffs' property was knowing and wrongful.

249.    Defendant are aware that they are no longer permitted to retain the Property of Plaintiffs and the Class.

250.    Plaintiffs and the Class demanded and continue to demand the return of their property.

251.    Defendant have failed to comply with Plaintiffs' demands and those of the Class.

252.    Plaintiffs and the Class were harmed by Defendant's conduct.

253.    The conduct of each Defendant was a substantial factor in causing this harm to Plaintiffs and the Class.

254.    As a result of Defendant's conduct, Plaintiffs and other Class members have been damaged in an amount to be determined at trial.

## SEVENTEENTH CAUSE OF ACTION

### Conversion

**(All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiffs Castillo and Camarena on behalf of the California Class – Under the Law of the State of California)**

255.    Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

256.    From the moment of cancellation or constructive cancellation, Plaintiffs and the Class owned and had a right to immediately possess the funds in the amount that they paid to Defendant's for tickets to events that were cancelled, including all fees collected.

257.    Plaintiffs held an immediate right to possession of the funds paid to Defendant following cancellation or constructive cancellation of the event(s); yet, Defendant continued to exercise control,

dominion or ownership over Plaintiffs' funds, including all fees collected.

258.     Defendant intentionally and substantially interfered with property belonging to Plaintiffs and the Class by taking possession of it, refusing to refund it to Plaintiffs, preventing Plaintiffs and the Class from having access to it, and/or refusing to return it to Plaintiffs after a demand was made for its return.

259.     Plaintiffs and the Class did not consent to Defendant's conduct in withholding their funds.

260.     Defendant's exercise of dominion and control over Plaintiffs' property was knowing and wrongful.

261.     Plaintiffs and the Class were harmed by Defendant's conduct.

262.     The conduct of each Defendant was a substantial factor in causing this harm to Plaintiffs and the Class.

263.     As a result of Defendant's conduct, Plaintiffs and other Class members have been damaged in an amount to be determined at trial.

## EIGHTEENTH CAUSE OF ACTION

### Conversion

**(All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiff Sousa on behalf of the New Hampshire Class – Under the Law of the State of New Hampshire)**

264.     Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

265.     From the moment of cancellation or constructive cancellation, Plaintiffs and the Class owned and had a right to immediately possess the funds in the amount that they paid to Defendant's for tickets to events that were cancelled, including all fees collected.

266.     Plaintiffs held an immediate right to possession of the funds paid to Defendant following cancellation or constructive cancellation of the event(s); yet, Defendant continued to exercise control, dominion or ownership over Plaintiffs' funds, including all fees collected.

267.     Defendant intentionally and substantially interfered with property belonging to Plaintiffs and the Class by taking possession of it, refusing to refund it to Plaintiffs, preventing Plaintiffs and the Class from having access to it, and/or refusing to return it to Plaintiffs after a demand was made for its return.

268.     Plaintiffs and the Class did not consent to Defendant's conduct in withholding their funds.

269.     Defendant's exercise of dominion and control over Plaintiffs' property was knowing and wrongful.

270.     Plaintiffs and the Class were harmed by Defendant's conduct.

271.     The conduct of each Defendant was a substantial factor in causing this harm to Plaintiffs and the Class.

272.     As a result of Defendant's conduct, Plaintiffs and other Class members have been damaged in an amount to be determined at trial.

### NINETEENTH CAUSE OF ACTION

**Unjust Enrichment**

**(All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiff Dranes on Behalf of the Illinois Class – Under the Law of the State of Illinois)**

273.     Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

274.     By taking and retaining possession and control of funds paid by Plaintiffs, Defendant were enriched.

275.     Plaintiffs were impoverished by Defendant's retention of funds paid for tickets to a cancelled or constructively cancelled event, including all fees assessed.

276.     Defendant's enrichment was unjustified and wrongful, as the retention of funds continued after the event was cancelled, and they had no right to retain such funds and use them for their own benefit at the expense of Plaintiffs, who received no benefit from the purchase.

277.     Defendant knew that Plaintiffs retained no benefit from the purchase; yet Defendant retained Plaintiffs' funds anyway and diverted them for their own purposes without justification.

278.     Plaintiffs are left without adequate remedy by law as a result of Defendant's unjust enrichment.

279.     Defendant actions in retaining Plaintiffs' funds following the cancellation of the events for which the tickets were sold violate fundamental principles of justice, equity, and good conscience.

280.     As a result of Defendant wrongful conduct, Plaintiffs and other Class Members have suffered damages in an amount to be determined at trial.

## TWENTIETH CAUSE OF ACTION

### Unjust Enrichment

**(All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiff Nellis on behalf of the Florida Class – Under the Law of the State of Florida)**

281.     Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

282.     By taking and retaining possession and control of funds paid by Plaintiffs, Defendant were enriched.

283.     Plaintiffs were impoverished by Defendant's retention of funds paid for tickets to a cancelled or constructively cancelled event, including all fees assessed.

284.     Plaintiffs therefore conferred a benefit upon Defendant, which benefits Defendant fully appreciated.

285.     Defendant accepted and retained the benefit under circumstances that make it inequitable for them to retain it without paying the value thereof.

286.     Defendant's enrichment was unjustified and wrongful, as the retention of funds continued after the event was cancelled, and they had no right to retain such funds and use them for their own benefit at the expense of Plaintiffs, who received no benefit from the purchase.

287.    Defendant knew that Plaintiffs retained no benefit from the purchase; yet Defendant retained Plaintiffs' funds anyway and diverted them for their own purposes without justification.

288.    Plaintiffs are left without adequate remedy by law as a result of Defendant's unjust enrichment.

289.    Defendant actions in retaining Plaintiffs' funds following the cancellation of the events for which the tickets were sold violate fundamental principles of justice, equity, and good conscience.

290.    As a result of Defendant wrongful conduct, Plaintiffs and other Class Members have suffered damages in an amount to be determined at trial.

## TWENTY-FIRST CAUSE OF ACTION

### Unjust Enrichment

**(All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiffs Castillo and Camarena on behalf of the California Class – Under the Law of the State of California)**

291.    Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

292.    By taking and retaining possession and control of funds paid by Plaintiffs, Defendant were enriched, receiving a benefit that it would be unconscionable for them to retain.

293.    Plaintiffs were impoverished by Defendant's retention of funds paid for tickets to a cancelled or constructively cancelled event, including all fees assessed.

294.    Defendant's enrichment was unjustified and wrongful, as the retention of funds continued after the event was cancelled, and they had no right to retain such funds and use them for their own benefit at the expense of Plaintiffs, who received no benefit from the purchase.

295.    Defendant knew that Plaintiffs retained no benefit from the purchase; yet Defendant retained Plaintiffs' funds anyway and diverted them for their own purposes without justification.

296.    Plaintiffs are left without adequate remedy by law as a result of Defendant's unjust enrichment.

297.    Defendant actions in retaining Plaintiffs' funds following the cancellation of the events

for which the tickets were sold violate fundamental principles of justice, equity, and good conscience.

298.    As a result of Defendant wrongful conduct, Plaintiffs and other Class Members have suffered damages in an amount to be determined at trial.

## TWENTY-SECOND CAUSE OF ACTION

### Unjust Enrichment

### (All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiff Sousa on behalf of the New Hampshire Class – Under the Law of the State of New Hampshire)

299.    Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

300.    By taking and retaining possession and control of funds paid by Plaintiffs, Defendant were enriched, receiving a benefit that it would be unconscionable for them to retain.

301.    Plaintiffs were impoverished by Defendant's retention of funds paid for tickets to a cancelled or constructively cancelled event, including all fees assessed.

302.    Defendant's enrichment was unjustified and wrongful, as the retention of funds continued after the event was cancelled, and they had no right to retain such funds and use them for their own benefit at the expense of Plaintiffs, who received no benefit from the purchase.

303.    Defendant knew that Plaintiffs retained no benefit from the purchase; yet Defendant retained Plaintiffs' funds anyway and diverted them for their own purposes without justification.

304.    Plaintiffs are left without adequate remedy by law as a result of Defendant's unjust enrichment.

305.    Defendant actions in retaining Plaintiffs' funds following the cancellation of the events for which the tickets were sold violate fundamental principles of justice, equity, and good conscience.

306.    As a result of Defendant wrongful conduct, Plaintiffs and other Class Members have suffered damages in an amount to be determined at trial.

## TWENTY-THIRD CAUSE OF ACTION

### Negligent Misrepresentation

**(All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiff Dranes on Behalf of the Illinois Class – Under the Law of the State of Illinois)**

307.     Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

308.     Defendant falsely represented material facts regarding its services, namely the availability and nature of their 100% Buyer Guarantee.

309.     Defendant knew that they misrepresented material facts because they knew that they could not honor the guarantee in the event of widespread cancellations

310.     Defendant were negligent in making false statements of material facts to its customers, including Plaintiffs and the Class, regarding its 100% Buyer Guarantee.

311.     Defendant intended to induce Plaintiffs and the Class to act by continuing to purchase tickets with peace-of-mind that they would receive a refund pursuant to the 100% Buyer Guarantee if the event to which they purchased tickets were cancelled.

312.     Plaintiffs and the Class acted with reasonable reliance as to the truth of Defendant's misrepresentations regarding the 100% Buyer Guarantee.

313.     As a result of Defendant's conduct, Plaintiffs and other Class Members suffered damages in an amount to be determined at trial.

## <u>TWENTY-FOURTH CAUSE OF ACTION</u>

### Negligent Misrepresentation

**(All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiff Nellis on behalf of the Florida Class – Under the Law of the State of Florida)**

314.     Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

315.     Defendant falsely represented material facts regarding its services, namely the availability and nature of their 100% Buyer Guarantee.

316.     Defendant knew that they misrepresented material facts because they knew that they could not honor the guarantee in the event of widespread cancellations

317.     Alternatively, Defendant made the misrepresentations under circumstances where they ought to have known of their falsity.

318.     Defendant were negligent in making false statements of material facts to its customers, including Plaintiffs and the Class, regarding its 100% Buyer Guarantee.

319.     Defendant intended to induce Plaintiffs and the Class to act by continuing to purchase tickets with peace-of-mind that they would receive a refund pursuant to the 100% Buyer Guarantee if the event to which they purchased tickets were cancelled.

320.     Plaintiffs and the Class acted with reasonable and justifiable reliance as to the truth of Defendant's misrepresentations regarding the 100% Buyer Guarantee.

321.     As a result of Defendant's conduct, Plaintiffs and other Class Members suffered damages in an amount to be determined at trial.

**TWENTY-FIFTH CAUSE OF ACTION**

**Negligent Misrepresentation**

**(All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiffs Castillo and Camarena on behalf of the California Class – Under the Law of the State of California)**

322.     Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

323.     Defendant falsely represented material facts regarding its services, namely the availability and nature of their 100% Buyer Guarantee.

324.     Defendant knew that they misrepresented material facts because they knew that they could not honor the guarantee in the event of widespread cancellations.

325.     Alternatively, Defendant failed to exercise reasonable care to verify the truth of their statements before making them.

326.     Defendant were negligent in making false statements of material facts to its customers, including Plaintiffs and the Class, regarding its 100% Buyer Guarantee.

327.     Defendant volunteered information to Plaintiffs not having equal knowledge, with the intention that they would act upon it.

328.     Defendant intended to induce Plaintiffs and the Class to act by continuing to purchase tickets with peace-of-mind that they would receive a refund pursuant to the 100% Buyer Guarantee if the event to which they purchased tickets were cancelled.

329.     Plaintiffs and the Class acted with reasonable reliance as to the truth of Defendant's misrepresentations regarding the 100% Buyer Guarantee.

330.     As a result of Defendant's conduct, Plaintiffs and other Class Members suffered damages in an amount to be determined at trial.

### <u>TWENTY-SIXTH CAUSE OF ACTION</u>

### Negligent Misrepresentation

**(All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiff Sousa on behalf of the New Hampshire Class – Under the Law of the State of New Hampshire)**

331.     Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

332.     Defendant falsely represented material facts regarding its services, namely the availability and nature of their 100% Buyer Guarantee.

333.     Defendant knew that they misrepresented material facts because they knew that they could not honor the guarantee in the event of widespread cancellations.

334.     Alternatively, Defendant failed to exercise reasonable care to verify the truth of their statements before making them.

335.     Defendant were negligent in making false statements of material facts to its customers, including Plaintiffs and the Class, regarding its 100% Buyer Guarantee.

336.     Defendant volunteered information to Plaintiffs not having equal knowledge, with the intention that they would act upon it.

337.    Defendant intended to induce Plaintiffs and the Class to act by continuing to purchase tickets with peace-of-mind that they would receive a refund pursuant to the 100% Buyer Guarantee if the event to which they purchased tickets were cancelled.

338.    Plaintiffs and the Class acted with reasonable reliance as to the truth of Defendant's misrepresentations regarding the 100% Buyer Guarantee.

339.    As a result of Defendant's conduct, Plaintiffs and other Class Members suffered damages in an amount to be determined at trial.

## TWENTY-SEVENTH CAUSE OF ACTION

### Breach of Express Warranty

### (All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiff Dranes on Behalf of the Illinois Class – Under the Law of the State of Illinois)

340.    Plaintiffs incorporate all preceding factual allegations as if fully set forth herein.

341.    The tickets Plaintiffs purchased constitute goods.

342.    Defendant created express warranties to Plaintiffs and the Class through the issuance and advertising of their 100% Buyer Guarantee.

343.    Defendant described the tickets that it sold as being covered by a guarantee of a refund in the event of cancellation, the 100% Buyer Guarantee, and that description was part of the basis of the bargain when Plaintiff and the Class purchased their tickets.

344.    Defendant's made affirmations of fact and/or promises about the quality of the tickets, namely the refund guarantee.

345.    The goods were not as warranted as the tickets were not covered by a guarantee of a refund when events were cancelled.

346.    Plaintiffs purchase of the tickets constituted a sale of goods.

347.    Plaintiffs and the Class acted with reasonable reliance as to the truth of Defendant's misrepresentations regarding the 100% Buyer Guarantee and were harmed thereby.

348. Plaintiffs provided Defendant with notice of the breach.

349. As a result of Defendant's conduct, Plaintiffs and other Class Members suffered economic loss and damages in an amount to be determined at trial.

## TWENTY-EIGHTH CAUSE OF ACTION

### Breach of Express Warranty

**(All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiff Nellis on behalf of the Florida Class – Under the Law of the State of Florida)**

350. Plaintiffs incorporate all preceding allegations as if fully set forth herein.

351. The tickets Plaintiffs purchased constitute goods.

352. Defendant created express warranties to Plaintiffs and the Class through the issuance and advertising of their 100% Buyer Guarantee.

353. Defendant described the tickets that it sold as being covered by a guarantee of a refund in the event of cancellation, the 100% Buyer Guarantee, and that description was part of the basis of the bargain when Plaintiff and the Class purchased their tickets.

354. The tickets were not covered by a guarantee of a refund when events were cancelled.

355. Plaintiffs and the Class acted with reasonable reliance as to the truth of Defendant's misrepresentations regarding the 100% Buyer Guarantee and were harmed thereby.

356. As a result of Defendant's conduct, Plaintiffs and other Class Members suffered damages in an amount to be determined at trial.

## TWENTY-NINTH CAUSE OF ACTION

### Breach of Express Warranty

**(All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiffs Castillo and Camarena on behalf of the California Class – Under the Law of the State of California)**

357. Plaintiffs incorporate all preceding allegations as if fully set forth herein.

358. The tickets Plaintiffs purchased constitute goods.

359.    Defendant created express warranties to Plaintiffs and the Class through the issuance and advertising of their 100% Buyer Guarantee.

360.    Defendant described the tickets that it sold as being covered by a guarantee of a refund in the event of cancellation, the 100% Buyer Guarantee, and that description was part of the basis of the bargain when Plaintiff and the Class purchased their tickets.

361.    The tickets were not covered by a guarantee of a refund when events were cancelled.

362.    Plaintiffs and the Class acted with reasonable reliance as to the truth of Defendant's misrepresentations regarding the 100% Buyer Guarantee and were harmed thereby.

363.    As a result of Defendant's conduct, Plaintiffs and other Class Members suffered damages in an amount to be determined at trial.

## THIRTIETH CAUSE OF ACTION

### Breach of Express Warranty

**(All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, Plaintiff Sousa on behalf of the New Hampshire Class – Under the Law of the State of New Hampshire)**

364.    Plaintiffs incorporate all preceding allegations as if fully set forth herein.

365.    The tickets Plaintiffs purchased constitute goods.

366.    Defendant created express warranties to Plaintiffs and the Class through the issuance and advertising of their 100% Buyer Guarantee.

367.    Defendant described the tickets that it sold as being covered by a guarantee of a refund in the event of cancellation, the 100% Buyer Guarantee, and that description was part of the basis of the bargain when Plaintiff and the Class purchased their tickets.

368.    The tickets were not covered by a guarantee of a refund when events were cancelled.

369.    Plaintiffs and the Class acted with reasonable reliance as to the truth of Defendant's misrepresentations regarding the 100% Buyer Guarantee and were harmed thereby.

370.    As a result of Defendant's conduct, Plaintiffs and other Class Members suffered damages in an amount to be determined at trial.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the classes of similarly situated individuals, requests the Court to:

(a)     Certify the case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, designate Plaintiffs as representative of the class(es) and designate counsel of record as class counsel;

(b)     Order Defendant to provide actual damages and equitable monetary relief (including restitution) to Plaintiffs and class members and/or order Defendant to disgorge profits they realized as a result of their unlawful conduct;

(c)     Order Defendant to pay punitive damages, as allowable by law, to Plaintiffs and class members;

(d)     Order Defendant to pay statutory damages, as allowable by the statutes asserted herein, to Plaintiffs and class members;

(e)     Declare Defendant conduct unlawful and enter an order enjoining Defendant from continuing to engage in the conduct alleged herein;

(f)     For both pre and post-judgment interest at the maximum allowable rate on any amounts awarded;

(g)     For costs of the proceedings herein;

(h)     For reasonable attorneys' fees as allowed by statute; and

(i)     Award such other relief as the Court deems appropriate under the circumstances.

## **JURY DEMAND**

Plaintiffs demand a jury on issues so triable.

DATED:  March 11, 2021                              Respectfully submitted,

**LIDDLE & DUBIN, P.C.**

s/ Nicholas A. Coulson

Steven D. Liddle
sliddle@ldclassaction.com
Nicholas A. Coulson
ncoulson@ldclassaction.com
975 E. Jefferson Avenue
Detroit, Michigan 48207
Tel: 313-392-0015
Fax: 313-392-0025

*Attorneys for Plaintiffs and the Putative Class*