**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TIMOTHY NELLIS, JANEL DRANES** | ) | |
| **LUCY SOUSA, DAVID CASTILLO,** | ) | |
| **and EDWARD CAMARENA on behalf** | ) | |
| **of themselves and all other similarly** | ) | **Case No. 1:20-cv-02486** |
| **situated,** | ) | |
| **Plaintiffs,** | ) | **Judge Robert M. Dow Jr.** |
| **v.** | ) | |
| | ) | |
| **VIVID SEATS LLC, a Delaware** | ) | |
| **Corporation,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFFS' UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF SETTLEMENT**

Plaintiffs Timothy Nellis, Janel Dranes, Lucy Sousa, David Castillo, and Edward Camarena (collectively "Plaintiffs") respectfully move this Court for an order preliminarily approving the attached Settlement Agreement (**Exhibit A**) that has been reached with the Defendant Vivid Seats LLC ("Defendant" or "Vivid Seats"). Defendant does not oppose this motion and supports the entry of the attached order (**Exhibit B**), which would preliminarily approve the Settlement Agreement and order that proper notice be disseminated to the Class. For the reasons stated in the accompanying memorandum, Plaintiffs respectfully request that this Court enter the order attached hereto as Exhibit B, preliminarily approving the mutually bargained, arms' length settlement and permitting notice to be disseminated to the Class.

DATED: March 9, 2021                                   Respectfully Submitted


                                                        s/ Nicholas A. Coulson

                                                        Steven D. Liddle
                                                        Nicholas A. Coulson

**LIDDLE & DUBIN, P.C.**
975 E. Jefferson Avenue
Detroit, Michigan 48207
sliddle@ldclassaction.com
ncoulson@ldclassaction.com
Tel: 313-392-0015
Fax: 313-392-0025

*Attorneys for Plaintiffs and the Putative Class*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **TIMOTHY NELLIS, JANEL DRANES** | ) | |
| **LUCY SOUSA, DAVID CASTILLO,** | ) | |
| **and EDWARD CAMARENA on behalf** | ) | |
| **of themselves and all other similarly** | ) | **Case No. 1:20-cv-02486** |
| **situated,** | ) | |
| **Plaintiffs,** | ) | **Judge Robert M. Dow Jr.** |
| **v.** | ) | |
| | ) | |
| **VIVID SEATS LLC, a Delaware** | ) | |
| **Corporation,** | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT .............................................................................1

FACTUAL BACKGROUND....................................................................................1

I.     INTRODUCTION ..........................................................................................1

II.    SUMMARY OF LITIGATION, INVESTIGATION, AND SETTLEMENT...................3

III.   THE PROPOSED SETTLEMENT AGREEMENT ...........................................5

     A.     The Class to Be Certified for Settlement Purposes..................................5

     B.     Monetary Relief ..................................................................................6

          1.     Distribution and Administration of the Settlement Fund ............6

          2.     Amount of Payments to Class Members ....................................7

     C.     Non-Monetary and Injunctive Relief....................................................8

     D.     Dissemination of Notice to the Class....................................................9

     E.     Service Awards to Class Representatives and Attorneys' Fees and Expenses .....12

     F.     Release Provisions ............................................................................12

     G.     Opt-Out Procedures and Opportunity of Class Members to Object.....................12

LEGAL STANDARD...........................................................................................13

ARGUMENT.......................................................................................................14

I.     THE PROPOSED SETTLEMENT AGREEMENT SATISFIES THE PREREQUISITES
     FOR PRELIMINARY APPROVAL ...............................................................14

     A.     Strength of Plaintiffs' Case Compared to Settlement Value.................14

     B.     The Complexity, Length, and Expense of Further Litigation ...............16

     C.     Opposition to the Settlement and Reaction of Class Members to Settlement
        Agreement .......................................................................................18

i

D.     Opinion of Competent Class Counsel ................................................................. 18

E.     Amount of Discovery and Stage of Proceedings .................................................. 19

II.     THE COURT WILL LIKELY CERTIFY THE SETTLEMENT CLASS AS IT SATISFIES ALL PREREQUISITES FOR CLASS CERTIFICATION ......................... 20

A.     The Numerosity Element is Satisfied, as the Settlement Class of Hundreds of Thousands is so Numerous that Joinder of All Settlement Class Members Would Be Exceedingly Impractical ................................................................. 21

B.     The Commonality Element is Satisfied, as Questions of Law and Fact are Overwhelmingly Common to Members of the Settlement Class ......................... 21

C.     The Typicality Element is Satisfied as Plaintiffs' Claims or Defenses are Typical of That of the Class ................................................................. 23

D.     Plaintiffs Satisfy the Adequacy Element as They Will Fairly and Adequately Protect the Interests of the Settlement Class ........................................................ 23

E.     The Predominance Requirement of Rule 23(b)(3) is Satisfied ............................ 25

F.     The Superiority Requirement of Rule 23(b)(3) is Satisfied as Class Action is Superior to Other Available Methods of Adjudicating the Controversy .............. 26

III.     THE PROPOSED FORM AND METHOD OF NOTICE IS THE BEST NOTICE PRACTICABLE AND SHOULD BE APPROVED ........................................................ 28

CONCLUSION ....................................................................................................................... 29

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abante Rooter & Plumbing, Inc. v. Oh Ins. Agency,* 2019 U.S. Dist. LEXIS 96532,  2019 WL 2366475 (N.D. Ill. May 29, 2019) ........................................................................... 13

*Alliance to End Repression v. City of Chicago*, 561 F.Supp. 537 (N.D.Ill.1982) ...................... 18

*Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*, 2011 U.S. Dist. LEXIS 84219, 2011 WL 3290302 (July 26, 2011) .............................................................................................. 19

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ...................................................................................... 26, 27

*Beaton v. SpeedyPC Software*, 907 F.3d 1018 (7th Cir. 2018) ................................................. 26

*Bell v. PNC Bank, N.A.*, 800 F.3d 360  (7th Cir. 2015) ................................................. 22, 26

*Burnett v. Conseco Life Ins. Co.,* No. 1:18-cv-00200-JPH-DML, 2020 U.S. Dist. LEXIS 129282, (S.D. Ind. July 22, 2020) ........................................................................... 14, 18

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) ................................................ 22

*Chapman v. Wagener Equities, Inc.*, 747 F.3d 489 (7th Cir. 2014) .......................................... 21

*Coss v. Playtex Prods.*, LLC, 2009 U.S. Dist. LEXIS 42933, 2009 WL 1455358 (N.D. Ill. May 21, 2009) ................................................................................................ 17

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982) ............................................................ 14, 18

*Gillespie v. Equifax Info. Servs., LLC*, 2009 U.S. Dist. LEXIS 131242 (N.D. Ill. December 18, 2009) ......................................................................................... 18

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330 (N.D. Ill. 2010) .... 19, 20

*In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106 (7th Cir. 2006) ............ 14

*In re NCAA Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202 (N.D. Ill. August 12, 2019) ............................................................................................... 21

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) .................................................................... 16, 18

*Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481 (7th Cir. 2012) ............................................... 20

*Kaufman v. Am. Express Travel Related Servs. Co.*, 264 F.R.D. 438 (N.D. Ill. 2009) .............. 19

*Lacy v. Cook County*, 897 F.3d 847 (7th Cir. 2018) ................................................................23

*Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill.2001) ....................................................18

*Mullane v. Central Hanover Trust,* 339 U.S. 306 (1950) .....................................................28, 29

*Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541 (7th Cir. 2016) ...................................................22

*Pruitt v. City of Chi.*, 472 F.3d 925 (7th Cir. 2007) ..................................................................21

*Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584 (7th Cir. 1993) ........................................23

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) .......................................13, 15

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992) .................................................................24

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006) .................14, 15

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ...............................................21, 22, 23

*Wong v. Accretive Health, Inc.*, 773 F.3d 859 (7th Cir. 2014) ...........................................13, 14

*Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729
(N.D. Ill. Aug. 29, 2016) ..........................................................................................................27

**Rules**

Fed. R. Civ. P. 23 ...........................................................................................*passim*

Fed. R. Civ. P. 23(a) ..............................................................................21, 24, 25

Fed. R. Civ. P. 23(a)(2) .......................................................................................21

Fed. R. Civ. P. 23(a)(4) .......................................................................................24

Fed. R. Civ. P. 23(b) ...........................................................................................21

Fed. R. Civ. P. 23(b)(3) ....................................................................21, 25, 26, 27

Fed. R. Civ. P. 23(c)(2) .......................................................................................28

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................28

Fed. R. Civ. P. 23(e) ......................................................................................13, 14

Fed. R. Civ. P. 23(e)(A) ................................................................................. 1

Fed. R. Civ. P. 23(e)(B)................................................................................... 1

Fed. R. Civ. P. 23(e)(1)(B) ............................................................... 13, 14, 20

Fed. R. Civ. P. 23(e)(2) ......................................................................... 1, 13

Fed. R. Civ. P. 23(g)(1)(C) .................................................................... 24, 25

**Other Authorities**

*Newberg on Class Actions ("Newberg")* § 11.25 (4th ed. 2002) ......................... 14, 24

## PRELIMINARY STATEMENT

Plaintiffs respectfully move this Court for an order pursuant to Fed. R. Civ. P. 23(e)(A)–(B) preliminarily approving the attached Settlement Agreement that has been reached between Plaintiffs and the Defendant Vivid Seats.  (Exhibit A, "Settlement Agreement").[1]  Defendant does not oppose this motion and supports entry of the attached order (Exhibit B "Preliminary Approval Order").  The proposed Preliminary Approval Order would preliminarily and conditionally: (1) approve the parties' Class Action Settlement Agreement and the corresponding settlement documents; (2) certify the Class for settlement purposes; (3) appoint Class Counsel; (4) appoint Class Representatives; (5) define the Class that is entitled to receive benefits under the Settlement Agreement and be bound by the Release; (6) approve the form, manner, and means of the proposed Class Notice; (7) approve the timeline and procedures set for Class Members to opt-out or object to the Settlement in advance of a Final Fairness Hearing pursuant to Fed. R. Civ. P. R. 23(e)(2); and (8) set a date for a Final Settlement Fairness Hearing to be held before this Court.

For the following reasons, Plaintiffs respectfully request that the Court grant this unopposed motion and enter the Preliminary Approval Order, so that notice of the agreement may be disseminated to the Class.

## FACTUAL BACKGROUND

### I.        INTRODUCTION

This class action was brought on April 23, 2020 on behalf of a class of consumers who purchased tickets through Vivid Seats' online ticket exchange but subsequently did not receive refunds, particularly after events across North America were cancelled on a massive scale in the

---

[1] Unless stated otherwise, all capitalized terms used herein are intended to have the same meaning as defined in the Settlement Agreement.

wake of the Covid-19 pandemic. ([Doc No. 1]). Plaintiffs raised claims for breach of contract, breach of implied contract, breach of express warranty, conversion, unjust enrichment, negligent misrepresentation, and numerous state consumer statutes for Defendant's alleged failure to provide contractually guaranteed refunds. Plaintiffs filed an Amended Complaint on March 8, 2021. ([Doc No. 45]).

In the face of extraordinarily complex and costly litigation, and despite their fervent contentions regarding the merits of their respective legal positions, the parties met in good faith to discuss opportunities for settlement. Following extensive adversarial and arms' length negotiations, the parties reached a settlement agreement that is in the best interests of the proposed Settlement Class and confers substantial monetary benefits and injunctive relief to the proposed Settlement Class. Under the proposed Settlement, Defendant will pay $7.5 Million into a common fund from which class members who purchased tickets to events that were cancelled may make claims for payment. Defendant will also provide highly beneficial injunctive relief, including a universal extension of existing, non-expired Credits held by all Settlement Class Members through December 31, 2022 and a protocol for receiving a choice of cash or vouchers upon the cancellation of any postponed or rescheduled event. In exchange for this relief, Defendant will obtain a release of the relevant claims from the proposed Class.

Absent this Settlement, this litigation would be hotly litigated, extraordinarily costly, time-consuming, and ultimately reduce the likelihood that a mutually beneficial resolution could be reached moving forward. There are numerous disputed legal issues that, if Defendant were successful on the merits, threatened to result in no recovery for Plaintiffs or the Class, including most prominently Defendant's intent to file a motion to compel arbitration of Plaintiffs' claims on an individual, non-class basis. Perhaps more significantly, delaying relief to the Class would only

exacerbate the ongoing harm alleged in the Amended Complaint. Accordingly, this Settlement Agreement clearly provides outstanding benefits to Plaintiffs and the Class and is the result of good faith negotiations that represent the best interest of the parties.

For the following reasons, this Court should preliminarily approve the proposed Settlement Agreement and enter the order attached hereto as Exhibit B.

## II.    SUMMARY OF LITIGATION, INVESTIGATION, AND SETTLEMENT

Plaintiffs' Counsel at Liddle & Dubin, P.C. ("L&D") expended significant time and resources investigating and developing the claims raised against Defendant Vivid Seats. (Declaration of Nicholas A. Coulson ISO Plaintiffs' Motion for Preliminary Approval ("Coulson Decl.") ¶¶ 4, 10). That thorough investigation revealed fundamental gaps in the refund practices of numerous online ticket resale companies, several of whom have allegedly failed to provide 100% guaranteed refunds to customers in the event of mass cancellations related to the Covid-19 pandemic despite clear, unambiguous, and well-advertised promises to do so. (*See Id.* ¶ 4). Essentially, because online secondary ticket market companies pay the seller immediately following the delivery of tickets, the Plaintiffs allege that the companies have not taken appropriate measures to ensure that adequate reserve funds are available to honor their 100% refund guarantees in the event of widespread event cancellations. Many customers were provided only with vouchers in lieu of cash refunds. As a result of Class Counsel's investigation into not only Vivid Seats, but also the market-wide issues in this industry, Liddle & Dubin, P.C. has initiated similar litigation against a number of participants in the online ticket resale market.[2]

---

[2] In addition to this matter against Vivid Seats, Plaintiffs' Counsel has investigated and taken action on behalf of consumers in *McMillan v. StubHub, Inc., et al*, (originally, C.A. No. 3:20-00319 (W.D. Wis.), now Case No. 4:20-cv-06392-HSG (N.D. Cal)), and *Trader v. Seatgeek, Inc.*, C.A. No. 1:20-03248. Both of these matters remain pending.

While Defendant maintains that it is not liable for damages resulting from these alleged failures to pay out refunds, Vivid Seats has agreed to a resolution that Plaintiffs believe is undoubtedly in the best interests of the Class. This proposed Settlement Agreement ensures that consumers across North America will receive substantial and usable value and benefits from the multitude of ticket purchases that were undermined by the mass closures that occurred in the wake of the ongoing Covid-19 Pandemic.

Vivid Seats was, and remains, fully prepared to file a motion to compel arbitration on an individual, non-class basis and to dismiss this action pursuant to the terms of use to which Vivid Seats contends Plaintiffs agreed when they allegedly purchased tickets through Vivid Seats' marketplace. (Settlement Agreement, pg. 2). However, prior to the deadline for the filing of Vivid Seats' motion to compel arbitration and with an express reservation of the right by Vivid Seats to move to compel arbitration if and when necessary, the parties began to discuss the possibility of settlement. (*Id.*)

On November 18, 2020, the parties engaged in a day-long mediation with the assistance of the Hon. Wayne R. Andersen (Ret.) of JAMS. (Settlement Agreement, pg. 3). The parties did not reach the terms of a settlement on that day, and instead continued to conduct arms' length negotiations through Judge Andersen in November and December of 2020, ultimately resulting in a preliminary agreement on the material terms of a class settlement of this action, subject to negotiating the remaining settlement terms and negotiating a definitive written settlement agreement. (*Id.*).

Class Counsel has made a thorough investigation of the facts and circumstances surrounding the allegations asserted in the Litigation and have engaged in investigation and discovery of the claims asserted therein. (*Id.* at pg. 3; Coulson Decl ¶ 10). Plaintiffs and Class

Counsel have examined the benefits to be obtained under the terms of this Settlement Agreement, have considered the risks associated with the continued prosecution of the Litigation and believe that it is in the best interests of the Settlement Class that the Litigation be resolved on the terms and conditions set forth in this Settlement Agreement. (Settlement Agreement at pg. 3; Coulson Decl ¶¶ 18-19). Class Counsel reached that conclusion after considering the factual and legal issues presented in the Litigation, the risks associated with the otherwise forthcoming motion of Vivid Seats to compel arbitration on a non-class basis, the other defenses available to Vivid Seats, the substantial benefits that members of the Settlement Class will receive as a result of the Settlement Agreement, the risks and uncertainties of continued litigation, the risks and uncertainties associated with the ongoing COVID-19 pandemic, the expense that would be necessary to prosecute the Litigation through trial and any appeals that might be taken and the likelihood of success at trial. (Settlement Agreement at pg. 3; Coulson Decl ¶ 18). Plaintiffs are pleased to present this proposed Settlement Agreement to the Court for preliminary approval.

## III.  THE PROPOSED SETTLEMENT AGREEMENT

### A. The Class to Be Certified for Settlement Purposes

Plaintiffs seek certification of the following Class for settlement purposes:

All Persons residing in the United States, its territories or Canada who at any time on or before the Preliminary Approval Date purchased a ticket through Vivid Seats to an event that subsequently became a Cancelled Event, a Postponed Event and/or a Rescheduled Event.
Specifically excluded are the following Persons:
(i) Vivid Seats and its subsidiaries and affiliates, employees, officers, directors, agents and representatives;
(ii) Class Counsel;
(iii) The judges who have presided over the Litigation; and
(iv) All Persons who have timely elected to become Opt Outs from the Settlement Class in accordance with the Court's orders.

(Settlement Agreement, pg. 15, Sec. III(A)). The Settlement Agreement contains straightforward definitions for the terms "Cancelled Event[,]" Postponed Event[,]" and "Rescheduled Event[.]" (Settlement Agreement, pgs. 5, 10, 13). This class definition is aligned with Plaintiffs' operative class definition in the First Amended Complaint. ([Doc. No. 45] ¶ 113). Compared to Plaintiffs' original Complaint [Doc. No. 1, ¶ 94], the Class definition has been refined to include residents of Canada and to more specifically identify the contours of the class based on the objective criteria of whether an event was cancelled, postponed, or rescheduled. These modifications of the definition of the Class ensure that the Settlement Agreement fairly and adequately encompasses the affected universe of Vivid Seat customers and to permit all members of the class to have the opportunity to obtain relief, opt-out, or object under the Settlement Agreement.

### B. Monetary Relief

Defendant will pay $7.5 million in cash to create a Cash Fund that will be used for payments to Class Members, the costs of notice and settlement administration, Court-approved Service Awards, and Attorneys' Fees and Expenses. (Settlement Agreement, pg. 5, Sec. II(4)). The Cash Fund will be available to all Settlement Class Members who were subjected to a Cancelled Event and submit a completed and signed Claim Form on or before the Claim Deadline, which is 90 days after the date the notice is mailed to the Class. (*Id.*, pg. 18, Sec. IV(A)).

### 1. Distribution and Administration of the Settlement Fund

Settlement Class Members who purchased a ticket to a Cancelled Event and held that ticket at the time the event became a Cancelled Event are entitled to submit a claim for a cash payment from the settlement. (*Id.*, pg. 19, Sec. IV(B)). The Claim Form that eligible Class Members can submit to receive payment from the Cash Fund is attached to the Settlement Agreement as Exhibit 1. The Claim Form requests the following information from Class Members regarding proof and

6

amount of their claim(s): (1) name of the Cancelled Event; (2) original date of Cancelled Event; (3) number of tickets; (4) order total; and (5) order number.

Under the Settlement, Vivid Seats will disburse the total Cash Fund into an escrow account to be held by the Settlement Administrator. (Settlement Agreement, pg. 22, Sec. V(A)). The parties propose that Angeion Group, a well-qualified professional settlement administration company, be appointed as Settlement Administrator. (*Id.*, pg. 13, Sec.II(46); Exhibit 4 to the Settlement Agreement, Weisbrodt Declaration ("Angeion Decl.")). The Settlement Administrator will (1) assign personnel to manage the settlement implementation process, including the Notice Program, (2) establish a toll-free telephone number that members of the Class may call to obtain information, (3) establish a mailing address to which members of the Settlement Class can send claims as well as a process for submitting claims electronically and (4) create a Settlement Website containing information about the Settlement, including the Published Notice and the Claim Form for download or electronic submission. (Settlement Agreement, pg. 25, Sec.VI).

### 2. Amount of Payments to Class Members

In general, the amount of payments to each qualifying Class Member from the Cash Fund shall be equal to the Purchase Price of the ticket to the Cancelled Event, less any sums already paid to the Settlement Class Member or spent in Credit by the Settlement Class Member. (Settlement Agreement, pg. 19, Sec. IV(B)(1)). If the Cash Fund is oversubscribed (i.e., more claims for compensation are approved than dollars available in the Cash Fund) then claims will be reduced pro rata, meaning that each cash award will be reduced by an equal percentage until the Cash Fund is no longer oversubscribed. (*Id.*, pg. 21, Sec. IV(D)) In the event of pro rata reductions, Settlement Class Members will forfeit that portion of any existing Credit that they currently hold and have not yet redeemed that is equal to (i) the Credit issued prior to any redemption of that Credit divided

by the Purchase Price multiplied by (ii) the cash payment being issued. (*Id.*) By way of example only, if a Settlement Class Member originally paid a Purchase Price of $100, originally received in 2020 a Credit valued at $100 (i.e., 100%) and receives $80 in cash from the Cash Fund, then the Settlement Class Member will receive a Credit valued at $20 (i.e., 20%) in addition to $80 in cash ((100/100) x 80). (*Id.*) If a Settlement Class Member originally paid a Purchase Price of $100, originally received in 2020 a Credit valued at $110 (i.e., 110%) and receives $80 in cash from the Cash Fund, then the Settlement Class Member will receive a Credit equal to $22 (i.e., 22% or 110% of $20) in addition to $80 in cash ((110/100) x 80). (*Id.*) If the Cash Fund is undersubscribed (i.e., fewer claims for compensation are approved than dollars or value available in the Cash Fund), then any remaining dollars within the Cash Fund shall be reallocated pro rata to previously-approved, valid claims against that Cash Fund. (*Id.*)

### C. Non-Monetary and Injunctive Relief

Vivid Seats has also agreed to provide substantial non-monetary injunctive relief that will directly inure to the benefit of the Class. A central concern at the heart of Plaintiffs' claims was that Vivid Seats required its customers who were subjected to a cancelled, rescheduled, or postponed event to automatically accept an expiring credit, during the Covid-19 Pandemic. These credits held little or no value, because it was entirely uncertain whether the event would take place, or, even if it did, whether it would be safe to attend the event.

Under the Settlement, Vivid Seats agrees to provide a choice to all Class Members whose event was postponed or rescheduled and becomes cancelled. At the time of event cancellation, those Class Members will have the option of (1) a cash payment equal to the Purchase Price of the ticket to the Postponed Event or Cancelled Event, less any sums already paid to the Settlement Class Member or spent in Credit by the Settlement Class Member (by making a request to Vivid

8

Seats within twenty-one (21) Days of receipt of a notice that the Postponed Event or Rescheduled Event has been cancelled); or (2) an automatic Credit equal to 110% of the total of the Purchase Price of the ticket to the Postponed Event or Rescheduled Event less any sums already paid to the Settlement Class Member or spent in Credit by the Settlement Class Member. (*Id.*, pg. 20, Sec. IV(B)(2)). Additionally, Vivid Seats has agreed to extend the expiration date for utilizing all non-expired credits to December 31, 2022. (*Id.*, pg. 20, Sec. IV(B)(3)). This is obviously important, because it will provide an opportunity for use of the credits once the pandemic has abated and events have resumed. Because of the injunctive relief obtained through Class Counsel's advocacy, all Class Members will be guaranteed value for their prior losses. The Settlement Agreement thus addresses substantially all of the objectionable conduct alleged in the Complaint, despite Defendant's denial of liability.

### D. Dissemination of Notice to the Class

The notice program provided in the Settlement Agreement constitutes the best notice practicable under the circumstances. (Angeion Decl. ¶ 11). The entire notice plan and claim process will be handled by a third-party Settlement Administrator, which will be overseen by Class Counsel and Defense Counsel. Three forms of notice will be disseminated by the Settlement Administrator, including notice via First Class U.S. Mail, email notice, and publication notice. Because Defendant obtained recently updated contact information from each of the customers who comprise the Class, these methods of providing notice are uniquely efficacious, and due process concerns will be fully addressed.

As soon as practicable after the Preliminary Approval Order, the Settlement Administrator will obtain the name, address and email address of each potential member of the Settlement Class from Vivid Seats. (Settlement Agreement, pg. 26, Sec. VII(C); Angeion Decl.). The plan and

timeline for disseminating notice to the Class is provided through the Settlement Agreement and

is summarized as follows in the chart below:

| Event | Date |
|---|---|
| Initial Date for Disseminating Notice ("Notice Date"[3]) | Within 60 days after entry of preliminary approval order |
| Deadline for Plaintiffs' Counsel to File Any Motion for Award of Attorneys' Fees and Service Awards | No later than the Notice Date |
| Deadline for Disseminating Mail Notice | Within 60 days after entry of preliminary approval order |
| Deadline for Disseminating Email Notice | Within 60 days after entry of preliminary approval order |
| Deadline for Website Publication of Notice | Within 14 days after entry of preliminary approval order |
| Deadline for Class Members to Submit Objections to The Proposed Settlement | Within 45 days after Notice Date |
| Deadline for Class Members to Submit Requests for Exclusions ("Opt Outs") from the Proposed Settlement | Within 45 days after Notice Date |
| Deadline for Class Members to Submit Claim Forms | Within 90 days after Notice Date |
| Deadline for Settlement Administrator to Submit Requests for Exclusion/Opt Out List to Class Counsel and Defense Counsel | Not later than seven (7) business Days after the deadline for submission of Requests for Exclusion<br><br>Class Counsel and Defense Counsel shall submit the names appearing on the Opt-Out List to the Court under seal at the time of the Final Approval Hearing. |
| Deadline for Response to Objections | 14 days before Final Approval Hearing |
| Deadline for Plaintiffs' Counsel to File Motion for Final Approval of Class Action Settlement | 60 days after Notice Date |
| Final Fairness Hearing | To be set via preliminary approval order |

---

[3] "Notice Date" shall mean the date upon which Mailed Notice is mailed to the Settlement Class in accordance with the terms set forth in Section VII(D) of the Settlement Agreement (Settlement Agreement, Pg. 8, Sec. II(25)). If Mailed Notice is mailed to the Settlement Class over a period of Days, the Notice Date shall be the date on which the last set of Mailed Notices are mailed.

Within sixty (60) Days of the entry of the Preliminary Approval Order, the Settlement Administrator will mail the Court-approved Mailed Notice (Exhibit 3 to the Settlement Agreement) to (1) Settlement Class Members who, on or after January 1, 2020, purchased a ticket(s) to a Cancelled Event(s), Postponed Event(s) or Rescheduled Event(s) and (2) Settlement Class Members who, prior to January 1, 2020, purchased a ticket(s) to a Cancelled Event(s) and have not received a cash payment equal to the Purchase Price of the ticket to the Cancelled Event, less any sums already paid to the Settlement Class Member or spent in Credit by the Settlement Class Member, at each Settlement Class Member's last known address as provided to Vivid Seats upon purchase of a ticket through Vivid Seats or, at an alternative, readily-ascertainable address by First-Class Mail, postage prepaid. (*Id.*, pg. 27, Sec. VII(D)). To ensure that mail notice is specifically targeted to provide actual notice to all Class Members, the Settlement Administrator will perform a national change of address search and forward any and all notices that are returned by the U.S. Postal Service with a forwarding address on record. (*Id.*, pg. 26, Sec. VII(F)).

Additionally, within sixty (60) Days of the entry of the Preliminary Approval Order, the Settlement Administrator will email the Court-approved Email Notice (Exhibit 2 to the Settlement Agreement) to all potential Settlement Class Members at the email address which they provided to Vivid Seats upon purchase of a ticket through Vivid Seats. (*Id.*, pg. 27, Sec. VII(E)).

Further, the Settlement Administrator will cause a unique settlement website to be updated. The website will provide Class Members with access to all the relevant settlement documents and information regarding the procedures for submitting claims, objecting, and/or opting out of the Settlement. (*Id.*, pg. 27, Sec. VII(G)).

Should any Class Members have questions, the Settlement Administrator will create a toll-free telephone number where Class Members may inquire and obtain additional information

regarding their rights under the Settlement. (*Id.*, pg. 25, Sec. VI(B)). The Settlement Administrator will also assign personnel to manage the implementation process and be available to members of the Class. (*Id.*) These forms of notice more than adequately constitute the best notice practicable under the circumstances, and the administration process provides numerous avenues to provide support to the Class.

### E. Service Awards to Class Representatives and Attorneys' Fees and Expenses

In recognition of the Plaintiffs' efforts on behalf of the Settlement Class, Plaintiffs intend to request service awards for the named class representatives. Vivid Seats has agreed not to oppose an application for a Service Award not to exceed $2,500 (two thousand five hundred dollars) per Named Plaintiff. (*Id.*, pg. 32, Sec. X(B)). Additionally, Plaintiffs will request that the Court grant an award of attorneys' fees and costs not to exceed $2,500,000, to be paid from the common cash fund. (*Id.*, pg. 32, Sec. X(A)). The Settlement is not conditioned on the Court awarding any particular amount in service awards, attorneys' fees, and/or costs. The attorneys' fees were negotiated after the relief for the Class was secured. (Coulson Decl. ¶ 20).

### F. Release Provisions

Should the Court grant final approval of the Settlement Agreement, Class Members will be deemed to have released Defendant, in general, from all claims relating to the alleged failure of Vivid Seats to provide refunds relating to a ticket for an event that was cancelled, postponed, or rescheduled event up until the Preliminary Approval Date. (*Id.*, pg. 11, Sec. II(39)).

### G. Opt-Out Procedures and Opportunity of Class Members to Object

Following the Notice Date, Settlement Class Members will have up to 45 days to opt-out or object to the proposed Settlement Agreement. Opt-outs must be in writing and submitted to the Settlement Administrator. (*Id.*, pg. 28, Sec. VIII (A)). No later than 7 business days after the

deadline for submission of opt-out requests, the Settlement Administrator will submit a list of valid opt-outs to the Court under seal. (*Id.*, pg. 29, Sec. VIII (E)). By opting out of the Settlement Agreement, individuals will not be able to obtain relief under the Agreement, and their rights will not be impacted by the Release. (*Id.*, pg. 30, Sec. VIII (G)).

Objections must also be submitted in writing along with certain specified information in order to be considered valid by the Settlement Administrator. (*Id.*, pg. 30, Sec. IX). The agreed-upon procedures and requirements for filing objections in connection with the Final Approval Hearing are intended to ensure the efficient administration of justice and the orderly presentation of any Settlement Class Members' objections to the Settlement Agreement, in accordance with such Settlement Class Members' due process rights. (*Id.*). Objectors whose objections are not sustained by the Court shall be bound by the Settlement Agreement.

## <u>LEGAL STANDARD</u>

"Federal Rule of Civil Procedure 23(e) requires court approval of any settlement that effects the dismissal of a class action." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002). District court review of a class action settlement proposal is a two-step process. The first step is a preliminary, pre-notification hearing to determine whether "the Court will likely be able to: (i) approve the proposal under Fed. R. Civ. P. 23(e)(2); and (ii) certify the Settlement Class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). This inquiry is essentially a consideration of whether "giving notice of the proposed Settlement to the Settlement Class is justified by the Parties' showing[.]" *Abante Rooter & Plumbing, Inc. v. Oh Ins. Agency*, 2019 U.S. Dist. LEXIS 96532, *3, 2019 WL 2366475 (N.D. Ill. May 29, 2019).

Ultimate final approval of a settlement under Fed. R. Civ. P. 23(e)(2), which must be after a final fairness hearing at a later date, simply requires a finding that the settlement is "fair,

adequate, and reasonable." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014) (citing See Fed. R. Civ. P. 23(e)). At the preliminary approval stage, a review of a settlement agreement requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. Herbert B. Newberg & Alba Conte, *Newberg on Class Actions ("Newberg")* § 11.25 (4th ed. 2002).

## **ARGUMENT**

## I. **THE PROPOSED SETTLEMENT AGREEMENT SATISFIES THE PREREQUISITES FOR PRELIMINARY APPROVAL**

"At this stage, Plaintiffs need show only that final approval is likely, not that it is certain." *Burnett v. Conseco Life Ins. Co.*, No. 1:18-cv-00200-JPH-DML, 2020 U.S. Dist. LEXIS 129282, at *10 (S.D. Ind. July 22, 2020) (citing the revised Fed. R. Civ. P. 23(e)(1)(B)). In determining whether the settlement is "fair, reasonable, and adequate," and thus merits approval the Seventh Circuit's longstanding guidance requires the district court to consider a variety of factors, including:

> (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.

*Wong,* 773 F.3d at 863 (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982)).

### A. **Strength of Plaintiffs' Case Compared to Settlement Value**

"The 'most important factor relevant to the fairness of a class action settlement' is the first one listed: 'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'" *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 2006). "In conducting this analysis, the district court should begin by 'quantify[ing] the net

expected value of continued litigation to the class.'" *Synfuel Techs., Inc.*, 463 F.3d at 653 (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284-85 (7th Cir. 2002).

An analysis of the relief conferred by the Settlement Agreement as compared against the potential recovery considering the risks, costs, and delay of continued litigation demonstrates that the value and benefit of the settlement to the Class is more than adequate, weighed against the strength of Plaintiffs' case on the merits. Class Counsel was able to secure a $7.5 million Cash Fund that is available to all Settlement Class Members whose event was cancelled. All Class Members whose events were cancelled and choose to retain their credits will have the expiration date extended to ensure an opportunity to use those credits. Class Counsel negotiated with Defendant to secure a significant extension of credit eligibility, to December 31, 2022. In light of the continuing distribution and availability of Covid-19 vaccines, this extension all but ensures that Settlement Class Members who were previously stuck with potentially unusable credits will now be able to recoup the full value of their purchases in one form or another, including cash if they so choose. All Class Members whose events were postponed or rescheduled but becomes cancelled will have a much longer window, 21 days, to choose a full cash refund, or they will be issued a 110% site credit that is also subject to the prolonged expiration date.

The Settlement Agreement gives an opportunity to every class member who experienced a cancelled event to submit a claim for cash. Absent this negotiated settlement, Vivid Seats users were unilaterally required to accept credits in lieu of a cash refund if they missed a seven day window to claim cash. This substantial Cash Fund provides an opportunity for class members to reclaim the full value (or more) for their tickets in cash, depending on how many claim forms are submitted. In the event of oversubscription of claims, claimants will still receive the balance of their payment in the form of a retained credit.

While Class Counsel maintains confidence in the strength of its merits arguments, the results of Defendant's previously intended motion to compel arbitration are anything but certain. The results of an adverse determination on this motion would be to vitiate Plaintiffs' claims on behalf of the class. Vivid Seats relied upon an express arbitration clause in their terms of use, which it claimed prohibit all federal litigation and class treatment of any claims. The risk of this loss is in addition to the substantial uncertainty in obtaining and maintaining class certification as well as establishing liability and damages. Accordingly, this "most important" factor bears the weight of an anvil against a feather in favor of preliminary approval of the proposed Settlement.

### B. The Complexity, Length, and Expense of Further Litigation

The relief achieved in the Settlement Agreement must be considered against the costs, risks, and delay of prosecuting this action through a trial and possible appeal. The difficulties of doing so in a case of this nature are difficult to overstate. The continuation of the litigation "would require the resolution of many difficult and complex issues," would "entail considerable additional expense," and would "likely involve weeks, perhaps months, of trial time." *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996) (citations omitted). As discussed in the previous section, the Settlement Agreement represents "an outcome at least comparable, if not far superior, to that which plaintiffs might achieve by proceeding to trial." *Id.*

Complex consumer class actions are inherently expensive to litigate, and the complexity and potential liability involved lends itself to prolonged litigation and appeals. As an initial matter, determining the enforceability of the arbitration agreement would have likely taken more than a year to finally resolve. This case was filed in April of 2020, and it would have taken at minimum several months for the parties to brief and the Court to decide on Defendant's motion to compel arbitration. Then, the result would be subject to a likely appeal.

16

On either track, whether the case devolved into hundreds or thousands of individual arbitration proceedings, or whether the Court proceeded with discovery, the timeline for resolution was going to be measured in many years. As this Court has previously noted, company-wide class discovery is "both costly and time consuming." *Coss v. Playtex Prods.*, LLC, 2009 U.S. Dist. LEXIS 42933, *9-10, 2009 WL 1455358 (N.D. Ill. May 21, 2009) (quotation omitted).

Following a motion for class certification, which itself typically takes at least one year, the case then would have moved to merits discovery and motions regarding the terms of Defendant's contract. Even if Plaintiffs were able to obtain class certification, they would have to affirmatively establish whether there was a contract or implied contract between Plaintiffs and Defendant, and, if so, what provisions if any apply to Plaintiffs' claims, whether or the extent to which Defendant's statements and representations regarding the 100% Buyer Guarantee are or constituted misrepresentations, and whether Defendant's failure to issue promised refunds constitutes a breach of contract, breach of implied contract, conversion, unjust enrichment, and/or an unlawful business practice, among other things. If the Defendant were able to raise a question of material fact on an affirmative defense, the case would have to be scheduled for a lengthy and complex trial on the merits.

The Settlement Agreement avoids the risk, complexity, time, and cost of further litigation, and provides the Class with substantial guaranteed monetary and non-monetary relief on an immediate basis. After considering the range of possibilities, it is Plaintiffs' counsel's experienced opinion that given the potential risks, rewards and costs of continuing litigation, that settlement on the proposed terms is the most desirable course for Plaintiffs and the Class to take. Those risks further counsel in favor of preliminarily approving the Settlement Agreement. Every day that the litigation dragged on would likely have been another day that the Class did not have the benefit of

the relief provided by the Settlement Agreement. This is another reason that experienced Class Counsel recommends the Settlement. Accordingly, this factor also weighs very heavily in favor of approving the Settlement Agreement.

### C. Opposition to the Settlement and Reaction of Class Members to Settlement Agreement

Because the Class Members have not yet had this chance to opt-out or object, consideration of this factor is premature and should be reserved for the final approval stage.

### D. Opinion of Competent Class Counsel

"The opinion of counsel weighs heavily in favor of the fairness, reasonableness, and adequacy of the Settlement Agreement." *Burnett v. Conseco Life Ins. Co.*, 2021 U.S. Dist. LEXIS 6510, *27, 2021 WL 119205 (S.D. Ind. January 13, 2021). Further, the Seventh Circuit has held that this Court is "entitled to rely heavily on the opinion of competent counsel advanced by the proponents." *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982) (quotation and marks omitted); *see also Isby*, 75 F.3d at 1200. "A settlement proposal arrived at after arms-length negotiations by fully informed, experienced and competent counsel may be properly presumed to be fair and adequate." *Gillespie v. Equifax Info. Servs., LLC*, 2009 U.S. Dist. LEXIS 131242, *10-11 (N.D. Ill. December 18, 2009) (citing *Alliance to End Repression v. City of Chicago*, 561 F.Supp. 537, 548 (N.D.Ill.1982); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D.Ill.2001)).

Here, Plaintiffs' Counsel is experienced in complex class actions. This Settlement Agreement was reached after careful consideration of the merits of each parties' respective positions, the risk attendant to prolonged class litigation, and the overall potential liability/value of Plaintiffs' class claims. The parties were able to reach this Settlement following extensive negotiations before, and with the assistance of, a neutral mediator, Hon. Wayne R. Andersen (Ret.) of JAMS. The negotiations were fully informed, and Counsel's recommendation to approve the

Settlement is entitled to a presumption of fairness.   Thus, the opinion of Counsel also weighs heavily in favor of approval.

### E.  Amount of Discovery and Stage of Proceedings

The early stage of the proceedings does not weigh strongly against finding that the settlement is likely to be deemed fair, reasonable, and adequate.  This analysis depends heavily on the circumstances and must be weighed against other factors.  It has been repeatedly reaffirmed that "[t]he lack of discovery prior to settlement … does not preclude a court from approving a settlement."  *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 350 (N.D. Ill. 2010) (citing, *e.g., Kaufman v. Am. Express Travel Related Servs. Co.*, 264 F.R.D. 438, 441 (N.D. Ill. 2009).  Indeed, "[t]he standard under this factor is not whether it is conceivable that more discovery could  possibly  be  conducted.  Rather,  courts  have  preliminarily  approved settlements where there was merely, for example, 'a significant amount of informal discovery,' or where no discovery at all was conducted before the settlement agreement was reached." *Am. Int'l Group, Inc. v. ACE INA Holdings, Inc*., 2011 U.S. Dist. LEXIS 84219, *41, 2011 WL 3290302 (July 26, 2011).

Here, while the parties stipulated to stay formal discovery pending Defendant's motion to compel arbitration, the settlement negotiations themselves resulted in meaningful mediation and settlement discovery, particularly regarding the size of the class, refunds and credits issued to date, and other salient factors.  This discovery played an important role in leading to a well-informed settlement, following a full-day mediation before a neutral, that balances the merits of the cases against the attendant risks of prolonged litigation.

Further, preliminarily approving a settlement where only limited informal discovery has taken place is more appropriate in cases where "the focus of this litigation appears to be more on

19

legal than factual issues[.]" *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. at 350. Such is the case here. ([Doc. No. 10], pg. 4-5). The overwhelming nature of the issues to be decided in this case relate to the interpretation of Vivid Seats' contract and the enforceability of arbitration and/or class waiver provisions. While there would no doubt be extensive discovery required in order for both sides to put on their cases at trial, the fundamental factual issue—whether the company denied refunds—is not in dispute. The parties have informally exchanged enough information to understand the total universe of potential damages, and discovery would not have substantially aided in developing a fully informed settlement. Thus, it cannot be said here that further factual discovery is required to render the settlement fair, adequate, and reasonable settlement.

Weighed against the other factors, the fact that no formal discovery was conducted does not render the Court unlikely to provide final approval of the settlement, especially given that mediation discovery did occur. For the foregoing reasons, the proposed settlement is fair, reasonable, and adequate and should be preliminarily approved so that notice may be disseminated and feedback can be submitted from the Class.

## II. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS, AS IT SATISFIES ALL PREREQUISITES FOR CLASS CERTIFICATION

Before ordering notice, Fed. R. Civ. P. 23(e)(1)(B)) requires that the Court determine that it will "likely be able to… certify the class for purposes of judgment on the proposal." *Id.* "A district court may certify a case for class-action treatment only if it satisfies the four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one of the conditions of Rule 23(b)." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012). For the following reasons, this case clearly satisfies all of the prerequisites to support conditional certification of the proposed Settlement Class, for settlement

purposes only, under Rules 23(a) and 23(b)(3) for the purposes of settlement. *See* Fed. R. Civ. P. 23(a)-(b).

> ### A. The Numerosity Element is Satisfied, as the Settlement Class Many Thousands is so Numerous that Joinder of All Settlement Class Members would Be Exceedingly Impracticable.

Numerosity is satisfied where "it's reasonable to believe [the class is] large enough to make joinder impracticable and thus justify a class action suit." *Chapman v. Wagener Equities, Inc.*, 747 F.3d 489, 492 (7th Cir. 2014). "Generally speaking, classes of forty or more members are sufficiently numerous to warrant certification." *In re NCAA Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 214, 2019 U.S. Dist. LEXIS 135682, *23, 2019 WL 3776955 (N.D. Ill. August 12, 2019) (citing *Pruitt v. City of Chi.*, 472 F.3d 925, 926-27 (7th Cir. 2007)). The Class includes many thousands of Class Members. The numerosity requirement is plainly satisfied, as joinder of all these parties would require a herculean, but wasteful, effort that would undoubtedly leave many thousands with no opportunity for relief.

> ### B. The Commonality Element is Satisfied, as Questions of Law and Fact are Overwhelmingly Common to Members of the Settlement Class.

Commonality requires "questions of law or fact common to the class." Fed R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). This means that the class claims "must depend on a common contention . . . of such a nature that it is capable of class wide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* The common questions "need not address every aspect of the plaintiffs' claims," but they "must 'drive the resolution of the litigation.'" *Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541, 553 (7th Cir. 2016) (quoting *Dukes*, 131 S. Ct. at 2551). "The fact that the plaintiffs might require individualized relief or not share all

questions in common does not preclude certification of a class." *Bell v. PNC Bank, N.A.*, 800 F.3d 360, 379 (7th Cir. 2015) (listing numerous cases citing same legal principle). "Under Rule 23, district courts are permitted to 'devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues.'" *Id.* (quoting *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)).

Plaintiffs' claims, and those of the Class, arise from common questions at the heart of the case involving Defendant's alleged failure to adhere to their longstanding "100% Buyer Guarantee" by discontinuing the essential function of the 100% Buyer Guarantee, a legally required full cash refund. It is beyond reasonable dispute that the common nucleus of operative facts in this case gives rise to functionally identical legal claims. The facts at issue here involve Vivid Seats' undisputed application of a policy to refuse monetary refunds and instead provide its customers with expiring site credits for use on future ticket sales.[4] Of the claims that remain, there are few if any, individualized factual or legal issues that would require a determination, either by the Court or by the finder of fact. Vivid Seats customers were either entitled to a refund under the contract, or they were not. If the Court were to determine that customers were entitled to a refund, or if a factfinder were to find in favor of Plaintiffs on affirmative defenses, the result would be the same for every member of the proposed settlement class—Defendant is or is not liable for providing refunds.

The common issues involved in this litigation are overwhelming and dwarf any individualized issues that might have needed to be addressed if the case were to proceed to trial.

---

[4] Although informal discovery has revealed that the proposed class is smaller than initially alleged in the Complaint, because of certain refunds requests being granted by the company and because many consumers voluntarily elected to spend their site credits, there is still a universe of many thousands of consumers who remain class members because they have not received a refund for their purchases.

Both liability and damages can be determined in "one stroke" based on the contract and Defendant's sale records, rendering this case a textbook example for when the class action mechanism is appropriate. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) (referencing the commonality as being susceptible to "one stroke" resolution of the claims at issue).

### C. The Typicality Element is Satisfied as Plaintiffs' Claims or Defenses are Typical of That of the Class.

The Seventh Circuit has explained that a named plaintiff's claims are typical if they arise "from the same event or practice or course of conduct that gives rise to the claims of other class members and [are] based on the same legal theory." *Lacy v. Cook County*, 897 F.3d 847, 866 (7th Cir. 2018). The typicality requirement is thus satisfied when "the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 597 (7th Cir. 1993).

Plaintiffs' claims stem from the same common course of conduct as the claims of the Class as a whole. The injuries suffered by Plaintiffs are of the same type as those of the Class and result from Defendant's common course of conduct with respect to its refusal to pay refunds and to honor its "100% Buyer Guarantee." Thus, Plaintiffs' claims are typical of the claims of the Class, in that they arise from the same course of events and rely upon identical factual and legal issues. For the same reasons that the commonality requirement is satisfied, so too is the typicality prerequisite.

### D. Plaintiffs Satisfy the Adequacy Element as They Will Fairly and Adequately Protect the Interests of the Settlement Class.

Rule 23(a) requires that the representative parties fairly and adequately represent the class. Fed. R. Civ. P. 23(a)(4). "A class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

Adequate representation is usually presumed in the absence of contrary evidence. *See* 2 *Newberg on Class Actions* §7.24 at pp. 7-81-82.

The named Plaintiffs in this case advance claims that are entirely typical of the claims of the absent class members. They have no conflict of interest with other Class members who were exposed to the same uniform practices of Defendant, and as a result, sustained the same injuries arising out of and caused by Defendant's unlawful conduct. Plaintiffs seek the same remedy as all Class Members: monetary and injunctive relief to resolve claims arising from Defendant's alleged failure to pay refunds and to honor the "100% Buyer Guarantee." Plaintiffs' interests are perfectly aligned with the interests of the Class and there are no conflicts of interest between different members of the proposed class.

Plaintiffs respectfully request that their chosen counsel, Steven Liddle and Nicholas Coulson, be appointed class counsel through the Court's order preliminarily approving the settlement. Rule 23(g)(1)(C) sets forth the factors for the Court to consider in making a determination regarding class counsel:

In appointing class counsel, Rule 23 directs the court to consider:

(i) the work counsel has done in identifying or investigating potential claims in the action,

(ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,

(iii) counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class; [and]

(B) may consider other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

(C) may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees and nontaxable costs; and

(D) may make further orders in connection with the appointment.

24

Fed. R. Civ. P. 23(g)(1)(C). Plaintiffs' counsel has performed a great deal of work in both identifying and investigating the claims in this action. Plaintiffs' counsel, Liddle & Dubin, P.C., has decades of experience litigating complex class litigation. (Coulson Decl ¶¶ 12-17). L&D practices nearly exclusively in complex class litigation and has litigated, successfully resolved, and administered many dozens of class action cases. (Coulson Decl ¶¶ 3, 13-15). L&D attorneys Liddle and Coulson are experienced in class action settlement negotiations, and their experience renders them highly capable of evaluating the merits and damages involved in class action cases, in addition to accurately valuating class claims.

L&D has zealously represented the class in this matter, in addition to developing other legal challenges to several other large players in the online retail ticket industry for their alleged failures to honor well-established refund policies in the wake of the Covid-19 pandemic. Proposed Class Counsel is experienced, knowledgeable, and zealous in their advocacy on behalf of consumers. Accordingly, Plaintiffs respectfully request that this court appoint their chosen counsel at L&D as counsel for the class.

### E. The Predominance Requirement of Rule 23(b)(3) is Satisfied.

After a proposed class has met the requirements of Rule 23(a), "a Rule 23(b)(3) class must also demonstrate that 'questions of law or fact common to the class members predominate over any questions affecting individual members.'" *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 376 (7th Cir. 2015). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). "The guiding principle behind predominance is whether the proposed class' claims arise from a common nucleus of operative facts and issues. This requires more than a tally of common questions; the district court must consider their

relative importance. On the other hand, not every issue must be amenable to common resolution; individual inquiries may be required after the class phase." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1029 (7th Cir. 2018) (citations and internal quotation marks omitted).

The claims in this case are based upon uniform conduct and uniform representations and omissions regarding Defendant's failure to pay for refunds and to honor its "100% Buyer Guarantee." Defendant's conduct and guarantees form an essential factual link between the entire Class and the Defendant. The claims of Plaintiffs and the Class rely on the same legal theories and evidence and share an overwhelmingly common issues of law and fact. Given the nature of analyzing Defendant's uniform conduct, making a determination regarding Defendant's failure to pay refunds and to honor its "100% Buyer Guarantee" resolves one Class member's claim just as clearly as it resolves the claim of another. As such, the common questions in this case predominate over any questions that might apply only to individual Class members.

### F. The Superiority Requirement of Rule 23(b)(3) is Satisfied as Class Action is Superior to Other Available Methods of Adjudicating the Controversy.

To assess superiority, the Court considers the following factors: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). In the settlement context, the Court need not address manageability concerns. *Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729, at *12 (N.D. Ill. Aug. 29, 2016) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997)).

The superiority of class litigation in this case is facially obvious. The specter of individually litigating hundreds of thousands of separate, virtually identical actions in order to

obtain damages ranging from $5 to a few thousand dollars per claim is utterly untenable and unmanageable. The result would be manifest injustice, as the vast majority of potential claimants would never be able to initiate individual civil litigation independently, due to cost barriers and other practical constraints. Even if some proportion of the potential class did file claims, it would undoubtedly result in wildly divergent legal results, and the legal system would not provide an adequate or fair remedy to people on an individual basis. Cases like this are precisely why Rule 23 exists, to ensure that widespread alleged legal violations with relatively small damage amounts would be permitted redress in federal courts.

Upon the well-informed belief of Counsel, no private parties have commenced *individual* litigation against Vivid Seats in federal court for its alleged failure to honor its 100% Buyer Guarantee. The only related litigation appears to be two later-filed copycat class actions involving the same allegations at issue in this case. The Plaintiffs in those cases will have the opportunity to opt-out of the Class, but more importantly Class Members have not shown an interest in controlling litigation individually. Rule 23(b)(3)'s superiority requirement is plainly satisfied. The class action mechanism is clearly superior to litigating hundreds or thousands of separate claims based on the same alleged wrongful conduct. The Class should be conditionally certified.

## III.   THE PROPOSED FORM AND METHOD OF NOTICE IS THE BEST NOTICE PRACTICABLE AND SHOULD BE APPROVED.

To satisfy due process, notice of a class action settlement must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust,* 339 U.S. 306, 314 (1950). Notice must clearly and concisely state the following, in plain, easily understood language: (i) the nature of the action; (ii) the class definition; (iii) the class claims; (iv) that a class member may enter an appearance through an attorney; (v) that the court will exclude from the class

27

any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members. Fed. R. Civ. P. 23(c)(2)(B).

Rule 23(c)(2) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2). Class notice may take the form of "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). The Advisory Committee Notes to the 2018 Amendments to Rule 23 "recognize contemporary methods of giving notice to class members" and that "technological change" has "introduced other means of communication that may sometimes provide a reliable additional or alternative means of giving notice" other than first class mail. Advisory Committee Notes to 2018 Amendments to Rule 23(c)(2).

The Proposed Notice easily satisfies each of these requirements. The class is readily ascertainable because of Defendant's business records. Further, this information has been provided to Vivid Seats relatively recently, as the vast majority of the refund claims at issue occurred during and after the beginning of 2020. Thus, the Settlement Administrator will be able to provide notice by first class mail and/or email as well as website publication, in addition to staffing a help line to field any questions or concerns by members of the putative class. Thus, the proposed notice scheme is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane,* 339 U.S. at 314.

Further, each of the mail, email, and publication notices are written using plain language and are organized topically so that Class Members can clearly understand their rights under this settlement. The notices clearly describe the pendency of this case, the terms of the settlement, informs the Class Members about the allocation of attorneys' fees and costs, and provides specific

information regarding the date, time, and place of the final approval hearing and Class Members' ability to exclude themselves from the settlement. Accordingly, the forms of notice and notice scheme satisfy due process and Rule 23 and should be approved.

## CONCLUSION

The proposed class action settlement is fair, adequate, and reasonable, and each element of Rule 23 is satisfied and weighs strongly in favor of conditional class certification for settlement purposes. Further, the proposed notice scheme settlement administration process is fair to absent class members and easily surpasses due process requirements. For the foregoing reasons, Plaintiffs respectfully request that this Court enter the order attached hereto as Exhibit B preliminarily approving the mutually bargained, arms' length settlement and permitting notice to be disseminated to the Class.

DATED:  March 11, 2021                                Respectfully Submitted


                                                                     s/ Nicholas A. Coulson

                                                      Steven D. Liddle
                                                      Nicholas A. Coulson
                                                      **LIDDLE & DUBIN, P.C.**
                                                      975 E. Jefferson Avenue
                                                      Detroit, Michigan 48207
                                                      sliddle@ldclassaction.com
                                                      ncoulson@ldclassaction.com
                                                      Tel: 313-392-0015
                                                      Fax: 313-392-0025

                                                      *Attorneys for Plaintiffs and the Putative Class*

## **CERTIFICATE OF SERVICE**

I, Nicholas A. Coulson certify that on March 11, 2021, a true and correct copy of the foregoing PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT was filed through the CM/ECF system, which caused notice to be sent to all counsel of record.

Dated:  March 11, 2021                           */s/ Nicholas A. Coulson*