**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TIMOTHY NELLIS, JANEL DRANES** | ) | |
| **LUCY SOUSA, DAVID CASTILLO,** | ) | |
| **and EDWARD CAMARENA on behalf** | ) | |
| **of themselves and all other similarly** | ) | **Case No. 1:20-cv-02486** |
| **situated,** | ) | |
| **Plaintiffs,** | ) | **Judge Robert M. Dow Jr.** |
| **v.** | ) | |
| | ) | |
| **VIVID SEATS LLC, a Delaware** | ) | |
| **Corporation,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFFS' MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Timothy Nellis, Janel Dranes, Lucy Sousa, David Castillo, and Edward Camarena (collectively "Plaintiffs") respectfully move this Court for entry of an order granting final approval of the Settlement Agreement ([Doc. No. 46-2]) reached in this case, and granting associated relief for purposes of effectuating the settlement. Defendant does not oppose this motion and supports the entry of the attached order (**Exhibit 1**). For the reasons stated in the accompanying memorandum, Plaintiffs respectfully request that this Court enter the order attached hereto as **Exhibit** 1.

DATED:  October 11, 2021                Respectfully Submitted

                                     s/ Nicholas A. Coulson
                                  Steven D. Liddle
                                  Nicholas A. Coulson
                                  **LIDDLE SHEETS COULSON P.C.**
                                  975 E. Jefferson Avenue
                                  Detroit, Michigan 48207
                                  sliddle@lsccounsel.com

ncoulson@lsccounsel.com
Tel: 313-392-0015
Fax: 313-392-0025

*Attorneys for Plaintiffs and the Putative
Class*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **TIMOTHY NELLIS, JANEL DRANES** | ) | |
| **LUCY SOUSA, DAVID CASTILLO,** | ) | |
| **and EDWARD CAMARENA on behalf** | ) | |
| **of themselves and all other similarly** | ) | **Case No. 1:20-cv-02486** |
| **situated,** | ) | |
| **Plaintiffs,** | ) | **Judge Robert M. Dow Jr.** |
| **v.** | ) | |
| | ) | |
| **VIVID SEATS LLC, a Delaware** | ) | |
| **Corporation,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT .............................................................................................1

FACTUAL BACKGROUND .................................................................................................1

I.      INTRODUCTION ......................................................................................................1

II.     SUMMARY OF LITIGATION AND SETTLEMENT PROCESS ...................................3

III.    THE PROPOSED SETTLEMENT AGREEMENT ......................................................3

        A.     The Class to Be Certified for Settlement Purposes ..................................3

        B.     Monetary Relief .........................................................................................4

        C.     Non-Monetary and Injunctive Relief .......................................................4

        D.     Service Awards to Class Representatives and Attorneys' Fees and Expenses ........5

        E.     Release Provisions .....................................................................................5

LEGAL STANDARD..........................................................................................................6

ARGUMENT .....................................................................................................................7

I.      THE SETTLEMENT AGREEMENT SHOULD BE APPROVED BECAUSE
      IT IS FAIR, ADEQUATE AND REASONABLE ............................................................7

        A.     Strength of Plaintiffs' Case Compared to Settlement Value ....................7

        B.     The Complexity, Length, and Expense of Further Litigation...................9

        C.     Opposition to the Settlement and Reaction of Class Members to Settlement
              Agreement.................................................................................................10

        D.     Opinion of Competent Class Counsel......................................................11

        E.     Amount of Discovery and Stage of Proceedings .....................................11

        F.     The Factors Enumerated in Fed. R. Civ. P. 23(e)(2) Further Support
              Final Approval .........................................................................................12

II.     THE SETTLEMENT CLASS REMAINS APPROPRIATE FOR CERTIFICATION.....15

CONCLUSION.........................................................................................................................15

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*, 2011 U.S. Dist. LEXIS 84219, 2011 WL 3290302 (July 26, 2011) .................................................................................................12

*Burnett v. Conseco Life Ins. Co.,* No. 1:18-cv-00200-JPH-DML, 2020 U.S. Dist. LEXIS 129282, (S.D. Ind. July 22, 2020) ........................................................................................11

*Gillespie v. Equifax Info. Servs., LLC*, 2009 U.S. Dist. LEXIS 131242 (N.D. Ill. December 18, 2009) ..................................................................................11

*Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368 (S.D. Ill. Dec. 13, 2018)...........................................................................................7

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330 (N.D. Ill. 2010) ..........11

*In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106 (7th Cir. 2006) ...............7

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ....................................................................9

*Kaufman v. Am. Express Travel Related Servs. Co.*, 264 F.R.D. 438 (N.D. Ill. 2009) ...............11

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) .................................6, 8

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992) .....................................................12

*Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926 (N.D. Ill. May 14, 2019) ...........................................................................................6

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006) ......................7-8

*Wong v. Accretive Health, Inc.*, 773 F.3d 859 (7th Cir. 2014) .......................................6

**Rules**

Fed. R. Civ. P. 23 ......................................................................................... *passim*

Fed. R. Civ. P. 23(a) ......................................................................................15

Fed. R. Civ. P. 23(a)(4) ..................................................................................12

Fed. R. Civ. P. 23(b) ......................................................................................21

Fed. R. Civ. P. 23(b)(3) ..................................................................................15

iii

Fed. R. Civ. P. 23(e) ........................................................................................ *passim*

**Other Authorities**

*Newberg on Class Actions* § 11.25 (4th ed. 2002) ......................................................12

## PRELIMINARY STATEMENT

Plaintiffs respectfully move this Court for an order pursuant to Fed. R. Civ. P. 23(e) finally approving the Settlement Agreement that has been reached between Plaintiffs and the Defendant Vivid Seats. ([Doc. No. 46-2], "Settlement Agreement").[1] Defendant does not oppose this motion and supports entry of the attached order (Exhibit 1, "Final Approval Order"). The proposed Final Approval Order would (1) finally approve the parties' Class Action Settlement Agreement and the corresponding settlement documents; (2) finally certify the Class for settlement purposes; (3) appoint Class Counsel; (4) appoint Class Representatives; (5) define the Class that is entitled to receive benefits under the Settlement Agreement and be bound by the Release; (6) implement the settlement benefits and injunctive relief; (7) award such attorneys' fees, expenses, and incentive awards as the Court may grant pursuant to Plaintiffs' separate motion; and (8) grant miscellaneous corresponding relief.

For the following reasons, Plaintiffs respectfully request that the Court grant this motion and enter the Final Approval Order

## FACTUAL BACKGROUND

### I.      INTRODUCTION

The Class's reaction confirms that this is an excellent settlement. Of the 386,266 Class Members who held tickets to cancelled events and were therefore eligible to make claims for payment from the Settlement Fund, 24,520[2] claims for payment were received. (Declaration of Ted Pickus ("Pickus Decl.") ¶ 3; Declaration of Brittany Cudworth ("Cudworth Decl.") ¶2 (both filed

---

[1] Unless stated otherwise, all capitalized terms used herein are intended to have the same meaning as defined in the Settlement Agreement.

[2] Because the Settlement Administrator has not completed claims processing, it is likely that some of these claims were not validly submitted such that some number will necessarily be denied.

1

concurrently herewith)). The total outstanding value of these claimants' claims is preliminarily valued at approximately $4,975,328 (subject to review and verification by the Settlement Administrator). (Cudworth Decl ¶2). This means that the Class Members who elected to receive cash will receive approximately 91% of the full value of their claim in cash and retain the balance in the form of a credit.[3] Class Members who passed on two chances to receive a cash refund – first by requesting a refund from Vivid Seats within seven days of the cancellation of their event[4] and then by declining to make a claim from the Settlement Fund – will keep the unused balance of their credits, which will be extended through the end of 2022 to ensure their usefulness.

Additionally, Class Members whose events have been postponed or rescheduled and have not yet occurred will be assured, by way of injunction, of the availability of a refund in the event of a cancellation. Further, due to concerns raised by certain California district attorneys, the Parties have additionally agreed, through entry of the Final Approval Order, to provide for optional refunds to California holders of tickets to postponed or rescheduled events that have not been cancelled and that have yet to occur (who the California district attorneys argue are entitled to relief under an unusual California ticket refund statute) irrespective of a cancellation announcement. (Final Approval Order ¶ 23). This provides for the availability of up to $12,390,301 in additional cash refunds beyond that already provided in the Settlement Agreement. (Pickus Decl. ¶ 6).

Likely because it provides such broad, sweeping relief, the Settlement Agreement has been exceptionally well-received by the Class. In contrast with the more than 24,000 eligible Settlement

---

[3] This assumes that the Court grants a revised attorneys' fees request of $2,259,562 (previously $2,376,998, adjusted to reflect increased administration costs), expenses ($8,087), and incentive awards ($12,500), and accounts for the updated costs of administration as projected by Angeion on November 11, 2021 ($708,814.).

[4] This is not an insignificant consideration as $114,776,542 (out of a total of $186,207,332) was refunded to Class Members outside of the context of the settlement. (Pickus Decl. ¶3).

Class Members who made claims against the Cash Fund and the hundreds of thousands who silently elected to retain their (increased value) credits, a mere 46 Class Members timely opted out (there were 8 late requests) and only 4 objected to the settlement (with another objecting only to attorneys' fees). (*See* Cudworth Decl. ¶ 4). Settlements involving Classes of this size seldom generate so little dissention. For the reasons set forth herein, Plaintiffs request that Court grant final approval of the Settlement Agreement and enter the Final Approval Order.

## II.      SUMMARY OF LITIGATION AND SETTLEMENT PROCESS

Plaintiffs refer the Court to their Motion for Preliminary Approval of Class Settlement ([Doc. No. 46]) for a more detailed history of this litigation. In short, the Settlement Agreement was reached after the parties had exchanged their respective positions on Defendant's anticipated motion to compel individual arbitration and in view of Plaintiffs' likelihood of obtaining and maintaining class certification and prevailing on the merits while proving damages. The parties engaged in a robust mediation process with the honorable Wayne R. Andersen (Ret.) before ultimately reaching an agreement in principle, which itself preceded several months of further negotiations on the details of the Settlement Agreement. Prior to reaching even the primary terms of the Settlement, Plaintiffs' counsel was informed (through informal discovery) of the size of the Class, the maximum potential recovery at trial, and the strengths and weaknesses of Plaintiffs' case. The Court granted preliminary approval of the Settlement Agreement on April 1, 2021 ([Doc. No. 61]), notice has been effectuated, and the Class is overwhelmingly in favor of the Settlement.

## III.      THE PROPOSED SETTLEMENT AGREEMENT

### A.  The Class to Be Certified for Settlement Purposes

Plaintiffs seek final certification of the following Class for settlement purposes:

All Persons residing in the United States, its territories or Canada who at any time on or before the Preliminary Approval Date purchased a ticket through Vivid Seats to an

event that subsequently became a Cancelled Event, a Postponed Event and/or a Rescheduled Event.

Specifically excluded are the following Persons:

(i) Vivid Seats and its subsidiaries and affiliates, employees, officers, directors, agents and representatives;
(ii) Class Counsel;
(iii) The judges who have presided over the Litigation; and
(iv) All Persons who have timely elected to become Opt Outs from the Settlement Class in accordance with the Court's orders.

### B. Monetary Relief

Defendant will pay $7.5 million in cash to create a Cash Fund that will be used for payments to eligible Settlement Class Members, the costs of notice and settlement administration, Court-approved attorneys' fees, expenses, and incentive awards. Because the fund is slightly over-subscribed once costs and fees are accounted for, Class Members who submitted valid claims for tickets to cancelled events will receive a pro rata share (preliminarily estimated at approximately 91%) of their purchase price, inclusive of fees and less any amounts refunded in cash or spent in credits. The remaining balance will be retained as a credit, and Settlement Class Members will forfeit that portion of any existing Credit that they currently hold and have not yet redeemed that is equal to (i) the Credit issued prior to any redemption of that Credit divided by the Purchase Price multiplied by (ii) the cash payment being issued. (*Id.*) By way of example only, if a Settlement Class Member originally paid a Purchase Price of $100, originally received in 2020 a Credit valued at $110 (*i.e.,* 110%) and receives $91 in cash from the Cash Fund, then the Settlement Class Member will receive a Credit equal to $9.90 (*i.e.*, 110% of $9) in addition to $91 in cash ((110/100) x 91). (*Id.*)

### C. Non-Monetary and Injunctive Relief

Vivid Seats has also agreed to provide substantial non-monetary injunctive relief that will directly inure to the benefit of the Class. First, Class Members who did not elect to receive cash will

retain credits previously provided to them, and Vivid Seats has agreed to extend the expiration date for utilizing all non-expired credits to December 31, 2022. This is obviously important, because it will provide an opportunity for use of the credits with the pandemic abating and events having resumed. Additionally, the parties propose an amended Final Approval Order that provides for the facilitation of refunds to California customers holding tickets to postponed events, as well as issues an injunction requiring Vivid Seats to change its Terms of Use to facilitate similar refunds going forward. (Ex. 1 ¶ 23). These changes were negotiated between the parties in part to respond to concerns raised by certain California district attorneys who asserted that California's unique Ticket Seller statute - Business and Professions Code section 22507- may have imposed obligations on Vivid Seats that could be impacted by the Settlement Agreement. This modification, if approved by the Court, would allow for up to approximately $12,390,301 in additional cash refunds while adding only an incremental cost to settlement administration, to be paid from the Cash Fund. (Pickus Decl. ¶ 6). A proposed further Notice **(Exhibit 2)** and Request for Payment Form **(Exhibit 3)** for purposes of implementing this relief are attached hereto.

### D. Service Awards to Class Representatives and Attorneys' Fees and Expenses

Plaintiffs have separately requested service awards for the named class representatives in the amount of $2,500 per named Plaintiff, attorneys' fees of $2,376,998 - *which request they hereby revise to $2,259,562* -   and expenses totaling $8,087. ([Doc. No. 62]). The Settlement is not conditioned on the Court awarding any particular amount in service awards, attorneys' fees, and/or costs. The attorneys' fees were negotiated after the relief for the Class was secured.

### E. Release Provisions

Should the Court grant final approval of the Settlement Agreement, Class Members will be deemed to have released Defendant, in general, from all claims relating to the alleged failure of Vivid

Seats to provide refunds relating to a ticket for an event that was cancelled, postponed, or rescheduled event up until the Preliminary Approval Date. (Settlement Agreement, pg. 11, Sec. II(39)).

## **LEGAL STANDARD**

"Federal Rule of Civil Procedure 23(e) requires court approval of any settlement that effects the dismissal of a class action." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002). District court review of a class action settlement proposal is a two-step process. The first step is a preliminary, pre-notification hearing to determine whether "the Court will likely be able to: (i) approve the proposal under Fed. R. Civ. P. 23(e)(2); and (ii) certify the Settlement Class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Ultimate final approval of a settlement under Fed. R. Civ. P. 23(e)(2), which must be after a final fairness hearing, requires a finding that the settlement is "fair, adequate, and reasonable." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014) (citing See Fed. R. Civ. P. 23(e)).

In determining whether a class action settlement is ultimately fair, adequate and reasonable, courts in this circuit consider the following factors:
(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer;
(2) the complexity, length, and expense of further litigation;
(3) the amount of opposition to the settlement;
(4) the reaction of members of the class to the settlement;
(5) the opinion of competent counsel; and
(6) the stage of the proceedings and the amount of discovery completed[.]

*Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926, at *13-14 (N.D. Ill. May 14, 2019) (quoting *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863-64 (7th Cir. 2014)). "The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Id.* (quoting *Wong*, 773 F.3d at 863-64. The amended

Rule 23(e)(2) also sets forth a list of points a court must consider in determining whether a proposed class action settlement is fair, reasonable, and adequate… They include whether:

[1] the class representatives and class counsel have adequately represented the class [Fed. R. Civ. P. 23(e)(2)(A)];

[2] the proposal was negotiated at arm's length [Fed. R. Civ. P. 23(e)(2)(B)];

[3] [the proposal] treats class members equitably relative to each other [Fed. R. Civ. P. 23(e)(2)(D)]; and

[4] the relief provided by the settlement is adequate, taking into consideration the costs, risks, and delay of trial and appeal; the effectiveness of the proposed method of distributing relief; the terms of any proposed award of attorneys' fees; any agreements made in connection with the proposed settlement. [Fed. R. Civ. P. 23(e)(2)(C)]

*Id.* (citing Fed. R. Civ. P. 23(e)(2)). "These considerations overlap with the factors previously articulated by the Seventh Circuit[.]" *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368, at *12 (S.D. Ill. Dec. 13, 2018).

## ARGUMENT

### I.    THE SETTLEMENT AGREEMENT SHOULD BE APPROVED BECAUSE IT IS FAIR, ADEQUATE AND REASONABLE.

Under both the traditional Seventh Circuit factors and the Rule 23(e)(2) considerations, the Settlement Agreement should be approved because it provides an excellent result for the Settlement Class under the facts and circumstances of this case. The Settlement Class has demonstrated that it is overwhelmingly in favor of the Settlement Agreement, which is unsurprising. Despite substantial obstacles to recovery in this case, the Settlement Agreement provides complete relief to Settlement Class Members in either cash or credit form, at their option.

#### A.  Strength of Plaintiffs' Case Compared to Settlement Value

"The 'most important factor relevant to the fairness of a class action settlement' is the first one listed: 'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'" *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 2006).

"In conducting this analysis, the district court should begin by 'quantify[ing] the net expected value of continued litigation to the class.'" *Synfuel Techs., Inc.*, 463 F.3d at 653 (quoting *Reynolds*, 288 F.3d at 284-85.

An analysis of the relief conferred by the Settlement Agreement as compared against the potential recovery considering the risks, costs, and delay of continued litigation demonstrates that the value and benefit of the settlement to the Class is more than adequate, weighed against the strength of Plaintiffs' case on the merits. Class Counsel was able to secure a $7.5 million Cash Fund that is available to all Settlement Class Members whose event was cancelled. All Settlement Class Members whose events were cancelled, who had not already received a full cash payment (approximately $114 million or 62% of all payments, had already been refunded, *see* Pickus Decl. ¶ 3), and who chose to receive cash from the Cash Fund will receive approximately 91% of their money back in cash and the rest (or more) in extended voucher credits.[5] Settlement Class Members who elected to retain their credits will have the expiration date extended to ensure an opportunity to use those credits. Class Counsel negotiated with Defendant to secure a significant extension of credit eligibility, to December 31, 2022. In light of the continuing distribution and availability of Covid-19 vaccines, this extension all but ensures that Settlement Class Members who were previously stuck with potentially unusable credits will now be able to recoup the full value of their purchases in one form or another, including cash if they so choose. All Class Members whose events were postponed

---

[5] While Class Members who requested cash will receive approximately 91% of their purchase price (less amounts refunded or spent in credits) in cash (and the rest or more in credits), the aggregate cash recovery as compared with the maximum potential recovery is also excellent. $7.5 million dollars represents approximately 19% of the approximately $40 million that was spent on cancelled events and not offset by refunds or spent vouchers. Particularly given the presence of vouchers to cover every dollar that is not refunded in cash and the realities of Defendant's contemplated motion to compel arbitration, this is an excellent recovery.

or rescheduled but become cancelled will have a much longer window, 21 days, to choose a full cash refund, or they will be issued a 110% credit that is also subject to the prolonged expiration date.

While Class Counsel maintains confidence in the strength of its merits arguments, the results of Defendant's previously intended motion to compel arbitration on a non-class basis are anything but certain. The results of an adverse determination on this motion would be to vitiate Plaintiffs' claims on behalf of the class. Vivid Seats relied upon an express arbitration clause in their terms of use, which it claimed prohibit all federal litigation and class treatment of any claims. The risk of this loss is in addition to the substantial uncertainty in obtaining and maintaining class certification as well as establishing liability and damages. Accordingly, this "most important" factor weighs heavily in favor of approval of the Settlement Agreement.

### B. The Complexity, Length, and Expense of Further Litigation

The relief achieved in the Settlement Agreement must be considered against the costs, risks, and delay of prosecuting this action through a trial and possible appeal. The difficulties of doing so in a case of this nature are difficult to overstate. The continuation of the litigation "would require the resolution of many difficult and complex issues," would "entail considerable additional expense," and would "likely involve weeks, perhaps months, of trial time." *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996) (citations omitted). As discussed in the previous section, the Settlement Agreement represents "an outcome at least comparable, if not far superior, to that which plaintiffs might achieve by proceeding to trial." *Id.*

Complex consumer class actions are inherently expensive to litigate, and the complexity and potential liability involved lends itself to prolonged litigation and appeals. As an initial matter, determining the enforceability of the arbitration agreement would have likely taken more than a year to finally resolve. This case was filed in April of 2020, and it would have taken at minimum several

months for the parties to brief and the Court to decide on Defendant's motion to compel arbitration. Then, the result would be subject to a likely appeal.

Assuming Plaintiffs were not forced to arbitrate, following a motion for class certification, which itself typically takes at least one year, the case then would have moved to merits discovery and motions regarding the terms of Defendant's contract. Even if Plaintiffs were able to obtain class certification, they would have to affirmatively establish whether there was a contract or implied contract between Plaintiffs and Defendant, and, if so, what provisions if any apply to Plaintiffs' claims, whether or the extent to which Defendant's statements and representations regarding the 100% Buyer Guarantee are or constituted misrepresentations, and whether Defendant's failure to issue promised refunds constitutes a breach of contract, breach of implied contract, conversion, unjust enrichment, and/or an unlawful business practice, among other things. If the Defendant were able to raise a question of material fact on an affirmative defense, the case would have to be scheduled for a lengthy and complex trial on the merits.

The Settlement Agreement avoids the risk, complexity, time, and cost of further litigation, and provides the Class with substantial guaranteed monetary and non-monetary relief on an immediate basis. After considering the range of possibilities, it is Plaintiffs' counsel's experienced opinion that given the potential risks, rewards, and costs of continuing litigation, that settlement on the proposed terms is the most desirable course for Plaintiffs and the Class to take. Those realities further counsel in favor of approving the Settlement Agreement.

### C. Opposition to the Settlement and Reaction of Class Members to Settlement Agreement

Plaintiffs will respond separately to the substance of the five objections (including one to attorneys' fees only). But the fact that only five objections were received and only 46 Class Members elected to be excluded from the Settlement (13 of whom received refunds or wanted to ensure that

they retained their tickets – for which no action was necessary) out of a class of over 943,000 is remarkable. These numbers pale in comparison to the more than 24,000 Class Members who claimed cash and the hundreds of thousands who elected to passively receive the settlement's benefits. The reaction of Class Members overwhelmingly supports approval.

### D. Opinion of Competent Class Counsel

"The opinion of counsel weighs heavily in favor of the fairness, reasonableness, and adequacy of the Settlement Agreement." *Burnett v. Conseco Life Ins. Co.*, 2021 U.S. Dist. LEXIS 6510, *27, 2021 WL 119205 (S.D. Ind. January 13, 2021). "A settlement proposal arrived at after arms-length negotiations by fully informed, experienced and competent counsel may be properly presumed to be fair and adequate." *Gillespie v. Equifax Info. Servs., LLC*, 2009 U.S. Dist. LEXIS 131242, *10-11 (N.D. Ill. December 18, 2009) (citations omitted). Plaintiffs' Counsel is experienced in litigating complex class actions. This Settlement Agreement was reached after careful consideration of the merits of each parties' respective positions, the risk attendant to prolonged class litigation, and the overall potential value of Plaintiffs' class claims. Counsel strongly supports the outcome and recommends the Settlement Agreement, counseling further in favor of its approval.

### E. Amount of Discovery and Stage of Proceedings

The early stage of the proceedings does not weigh strongly against finding that the settlement is likely to be deemed fair, reasonable, and adequate. This analysis depends heavily on the circumstances and must be weighed against other factors. It has been repeatedly reaffirmed that "[t]he lack of discovery prior to settlement … does not preclude a court from approving a settlement." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 350 (N.D. Ill. 2010) (citing, *e.g., Kaufman v. Am. Express Travel Related Servs. Co.*, 264 F.R.D. 438, 441 (N.D. Ill. 2009). Indeed, "[t]he standard under this factor is not whether it is conceivable that

more discovery could possibly be conducted. Rather, courts have preliminarily approved settlements where there was merely, for example, 'a significant amount of informal discovery,' or where no discovery at all was conducted before the settlement agreement was reached." *Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*, 2011 U.S. Dist. LEXIS 84219, *41, 2011 WL 3290302 (July 26, 2011).

Here, while the parties stipulated to stay formal discovery pending Defendant's motion to compel arbitration, the settlement negotiations themselves resulted in meaningful mediation and settlement discovery, particularly regarding the size of the class, refunds and credits issued to date, and other salient factors. This discovery played an important role in leading to a well-informed settlement, following a full-day mediation before a neutral mediator, The Honorable Wayne Andersen (ret.) of JAMS, that balances the merits of the cases against the attendant risks of prolonged litigation. The parties have informally exchanged more than enough information to understand the total universe of potential damages, and discovery would not have substantially aided in developing a fully informed settlement. Thus, it cannot be said here that further factual discovery is required to render the settlement fair, adequate, and reasonable settlement. Weighed against the other factors, the fact that no formal discovery was conducted does not counsel against approval of the settlement.

### F. The Factors Enumerated in Fed. R. Civ. P. 23(e)(2) further support final approval.

#### 1. The Class Representatives and Class Counsel Have Adequately Represented the Class.

As previously noted in addressing Rule 23(a)(4)'s adequacy requirement at the preliminary approval stage, Plaintiffs and their counsel have vigorously represented the Class's interests. "A class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Adequate representation is usually presumed in the absence of contrary evidence. *See* 2 *Newberg on Class Actions* §7.24 at pp. 7-81-

82. The named Plaintiffs in this case advanced claims that are entirely typical of the claims of the absent class members. They have no conflict of interest with other Class members who were exposed to the same uniform practices of Defendant, and as a result, sustained the same injuries arising out of and caused by Defendant's allegedly unlawful conduct. Plaintiffs sought the same remedy as all Class Members would have been entitled: monetary and injunctive relief to resolve claims arising from Defendant's alleged failure to pay refunds and to honor the "100% Buyer Guarantee." Plaintiffs' interests are perfectly aligned with the interests of the Class and there are no conflicts of interest between different members of the proposed class.

Similarly, Plaintiffs' counsel is experienced in the litigation of complex class actions and has at all times acted in the interests of the Class. Counsel has zealously represented the class in this matter, and is experienced, knowledgeable, and zealous in their advocacy on behalf of consumers. As demonstrated by the result, this case has been no exception.

### 2. The Settlement Was Negotiated at Arm's Length.

The parties negotiated this settlement through an extensive process that included multiple mediation sessions with a respected third party neutral. No portion of the settlement funds will revert to the Defendant's coffers, nor could it have regardless of the number of claims. While the Settlement Agreement includes a "clear-sailing" clause, the attorneys' fees are at the Court's discretion and the Settlement Agreement is not contingent on the award of any particular fee. The fee was negotiated only after the underlying relief had been secured, and the requested fee is substantially less than the maximum fee request allowed under the agreement.

### 3. The Relief Provided by the Settlement is Adequate, Taking Into Account the Relevant Considerations.

This factor directs the Court to consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of

processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C). It entails many of the same considerations as the first two factors generally utilized by the Seventh Circuit and much of the same analysis is therefore applicable. However, the more specific inquiries further support a finding that the settlement is fair, adequate and reasonable.

The proposed method of distributing relief to the Class will be highly effective. Class Members who elected to receive cash have already provided their information to the Settlement Administrator. Class Members who did not elect to receive cash will automatically have the expiration date of their Vivid Seats vouchers extended through the end of 2022. These direct payments and extensions will ensure that substantially all of the negotiated relief makes it into the hands of Class Members.

As addressed in Plaintiffs' separate Motion for Award of Attorneys' Fees, the settlement is not contingent upon the Court awarding any particular amount of fees, the requested fees are well within the range of typical contingency fees within this Circuit, and the fees will be paid around the same time Class Member payments are made. Finally, there are no agreements other than the Settlement Agreement (and the previously filed supplemental agreement relating to the opt-out threshold) that pertain to the resolution of this case. Each of these considerations counsels in favor of approval.

4. The Settlement Treats Class Members Equitably Relative to Each Other

Setting aside the modest incentive awards requested on behalf of each Named Plaintiff, the only potential difference in the treatment of Class Members is that those whose events were cancelled were eligible to make claims from the cash fund whereas those who only held tickets to postponed or rescheduled events will receive injunctive relief that ensures their meaningful right to a monetary

14

refund if their event becomes cancelled.[6] This difference, though, ensures uniform treatment. All Settlement Class Members will have had an opportunity to select a refund for tickets to cancelled events in cash over a 21-day period (either the claims period or 21 days after notice of cancellation) as opposed to the 7-day period originally provided by Vivid Seats. Other than California residents (if the proposed modification is approved), the applicable contract provides for refunds for cancelled events, not postponed events.

## II.     THE     SETTLEMENT     CLASS     REMAINS     APPROPRIATE     FOR CERTIFICATION

In their Motion for Preliminary Approval, Plaintiffs provided an analysis of the Settlement Class's satisfaction of Rules 23(a) and 23(b)(3)'s requirements for class certification. Plaintiffs submit that nothing has changed since that time which would warrant a different conclusion, and request that the Court grant certification to the Settlement Class so that the Settlement Agreement may be effectuated.

## CONCLUSION

The proposed class action settlement is fair, adequate, and reasonable, and each element of Rule 23 is satisfied and weighs strongly in favor of class certification for settlement purposes. The Class is overwhelmingly supportive of the Settlement Agreement and will benefit greatly from its implementation. For the foregoing reasons, Plaintiffs respectfully request that this Court enter the Final Approval Order.

DATED: October 11, 2021                                  Respectfully Submitted

---

[6] With the proposed additional relief beyond that offered in the Settlement Agreement that is outlined in the Final Approval Order, Settlement Class Members who resided in California when they purchased their tickets and who hold a ticket to a postponed or rescheduled event that has not yet occurred and that is not yet cancelled would also gain the option to have Vivid Seats facilitate a refund with the seller of the Settlement Class Member's tickets. This difference is justified by the position of a number of California District Attorneys that California's ticket seller statute (California Business and Professions Code section 22507) could impose obligations on Vivid Seats with respect to California residents only

 s/ Nicholas A. Coulson
Steven D. Liddle
Nicholas A. Coulson
**LIDDLE SHEETS COULSON P.C.**
975 E. Jefferson Avenue
Detroit, Michigan 48207
sliddle@lsccounsel.com
ncoulson@lsccounsel.com
Tel: 313-392-0015
Fax: 313-392-0025

*Attorneys for Plaintiffs and the Putative Class*

## **CERTIFICATE OF SERVICE**

I, Nicholas A. Coulson certify that on October 11, 2021, a true and correct copy of the

foregoing PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT was filed

through the CM/ECF system, which caused notice to be sent to all counsel of record.

Dated:  October 11, 2021                                   /s/ *Nicholas A. Coulson*_____